# Exhibit B

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF FLORIDA**
**TALLAHASSEE DIVISION**

---

FLORIDIANS PROTECTING
FREEDOM, INC.

                      *Plaintiff,*


        v.

                                      Civil Action No. _____

JOSEPH A. LADAPO, in his official
capacity as State Surgeon General and
Head of the Florida Department of
Health, AND JOHN WILSON, in his
individual capacity and in his official
capacity as General Counsel to the
Florida Department of Health,




                      *Defendants.*

---

## DECLARATION OF DR. SHELLY TIEN

My name is Shelly Tien. I am over the age of 18 and fully competent to make

this declaration. Under penalty of perjury, pursuant to 28 U.S.C. § 1746, I declare:

1.      I am a board-certified physician in obstetrics and gynecology, and

maternal-fetal medicine. I currently practice at Planned Parenthood of South, East and North Florida ("PPSENFL") and Genesis Maternal-Fetal Medicine in Tucson, Arizona. I also serve as a contract physician for Trust Women Wichita, Kansas and provide telehealth for Mitera.

2.     I provide the following opinions as an expert in obstetrics and gynecology and maternal-fetal medicine, including the provision of abortions. The opinions herein are based on my knowledge and experience in these areas, including my training, clinical experience, teaching, ongoing review of the relevant medical literature, and attendance at and participation in relevant conferences.  A copy of my curriculum vitae is attached as **Exhibit A.**

3.     I also base this declaration on my experience with the unworkable exceptions in Florida's extreme abortion ban and my understanding of Caroline's circumstances as set out herein.

4.     I submit this declaration regarding the Department of Health's letter dated October 3, 2024 ("DOH letter") about the television ad "Caroline" which is currently airing in Florida.  The DOH Letter is attached hereto as **Exhibit B.**

5.     It is my understanding that in March of 2022, Caroline was diagnosed with a mass in her brain.  At the time, she was about 17 weeks pregnant with her second child.   When she was about 20 weeks pregnant, she underwent surgery to

3

investigate the mass and was diagnosed with terminal brain cancer.

6.      Under Florida's extreme abortion ban, patients in factual circumstances similar to those set out above who need an abortion must find a doctor who will perform the abortion and two doctors must certify in writing that the termination of pregnancy is "necessary to save the pregnant woman's life or avert a serious risk of substantial and irreversible physical impairment of a major bodily function of the pregnant woman other than a psychological condition." Fla. Stat. s. 390.0111(1).

7.      In the setting of a terminal malignancy, Caroline needed medical interventions in order to treat the brain cancer to prolong her life.  Ending the pregnancy allowed her to have the best treatment options to improve the quality of, and hopefully, prolong her life—and the treatment would have likely harmed the fetus—therefore, she needed an abortion to receive the optimal cancer treatment.

8.      Under Florida's current law, I would not have provided this abortion because it could be viewed as a crime to terminate Caroline's pregnancy because the termination itself would not have "save[d] the pregnant woman's life," and there are no exceptions in the law for palliative care, treatments to alleviate cancer-related suffering, or to prolong a patient's life. As the cancer was terminal, the abortion would not have saved the patient's life and therefore could be illegal under Florida law.

9.      As physicians we face these complex clinical scenarios every day and these dangerous bans prevent us from being able to provide the best science-based

care for our patients. The exceptions provided under Florida law are not adequate for many, many women who need medically necessary abortions. In my opinion, you cannot legislate medical complexity, and you cannot legislate individualized evidence-based clinical decision making.

10. The Department of Health's actions in trying to silence patients' and doctors' experiences – and the extreme abortion ban itself – are dangerous for healthcare providers and their patients. The Department has provided only the most minimal of guidance on the exceptions, which guidance is woefully inadequate and medically nonsensical, leaving doctors and healthcare systems to interpret the laws themselves. Doctors are navigating providing medical care in a truly threatening environment where the consequence of inaccurate interpretation of the law means disciplinary and criminal action. This environment effectively prevents physicians from providing the standard of care out of fear of prosecution and egregiously harms our patients.

I, Shelly Tien, declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and recollection.

Dated: 15/10/2024

_____
**Shelly Tien**

5

# Exhibit A

**(DECLARATION OF DR. SHELLY TIEN)**

Shelly Hsiao-Ying Tien, M.D./M.P.H.
shtien@gmail.com
312-810-3833

**Genesis Maternal-Fetal Medicine, Tucson, Arizona**
04/2022 – current, physician

**Planned Parenthood – South, East and North Florida**
03/2021 – current, physician

**Trust Women, Oklahoma and Kansas**
02/2021 - current, physician

**Mitera Telehealth, California**
08/2024 – current, physician

**Planned Parenthood – Southeast, Alabama**
12/2021 – 5/2022, physician

**NorthShore University Health System/University of Chicago**
07/2015 – 12/2020, physician

**Fellowship, Maternal-Fetal Medicine**
University of Minnesota, Minneapolis
07/2012 – 06/2015

**Residency, Obstetrics and Gynecology**
Advocate Illinois Masonic Medical Center, Chicago, Illinois
07/2008 – 06/2012

**Medical Education**
Tufts University School of Medicine, Boston, Massachusetts
08/2003 - 05/2008
M.D./M.P.H.

**Education**
Undergraduate - University of Illinois, Champaign/Urbana
Biology
08/1999 - 06/2003
B.S.

**Board certification**
Maternal-Fetal Medicine 2018
Obstetrics and Gynecology 2013

**Memberships**
Society for Maternal-Fetal Medicine
2012 – current
American College of Obstetricians and Gynecologists
2008 – current
Society of Family Planning
2022 – current

**Medical Expert Witness cases**

Gainesville Woman Care, LLC, et al., vs. State of Florida, et al., in the 24 hour Mandated Delay
- January 2022 - Provided deposition as the medical expert witness on behalf of the ACLU.

Planned Parenthood of Southwest and Central Florida, et al., vs. State of Florida, et al., in the 15 week abortion ban
- June 2022 - Provided deposition and trial testimony as the medical expert witness and plaintiff on behalf of the ACLU and PPFA.

**Committees**

**Northshore University Health System Obstetric Practice Committee - Chair,** 2016 – 2020
- Educational committee that creates physician guidelines and nursing protocols for obstetric care for Evanston and Highland Park hospitals.

**Northshore University Health System Epic Physician builder,** 2018 – 2020
- Developed and implemented obstetric clinical workflows for our Epic electronic medical record system.

**Illinois Perinatal Quality Collaborative (ILPQC) - Clinical lead for the Immediate Postpartum Long-Acting Reversible Contraception initiative,** 2018 – 2020
- Implementation of immediate postpartum LARCs for patients at Evanston and Highland Park hospitals.
- Provision of educational support for other birthing hospitals in the state.

**Maternal-Fetal Medicine Clinical Competency Committee,** 2018 - 2020
- Biannual meeting and evaluation of educational progress for maternal-fetal medicine fellows.

**Volunteer Experience**

**Medical Students for Choice (MSFC), Massachusetts,** 09/2003-04/2008
Student coordinator
- Facilitated multiple lectures and workshops on reproductive education and contraception.
- Organized the 2005 regional student conference for MSFC.

**Cross Cultural Solutions, Ghana,** 06/2003-07/2003
Medical Volunteer
- Volunteered through the organization Cross Cultural Solutions.
- Provided immunizations to children, assisted in the local health center pharmacy, and taught women's health education in the maternity ward.

**Provena Mental Health, Illinois,** 04/2001-05/2002
Suicide Hotline Volunteer
- Volunteer counselor on the suicide hotline.
- Provided mental health interventions to clients in crisis, and general health resources and information for family members and support persons.

**Rape Crisis Services, Illinois,** 05/2000-05/2003
Medical Advocate and Hotline Volunteer
- Hotline volunteer providing counseling, support and resources to survivors of sexual violence.
- Medical advocate for patients – provided education and support during the emergency room visits for patients who presented after an assault.

**Publications**

Tien SH, Crabtree JN, Gray HL, Peterson EJ. Immunologic response to vaccine challenge in pregnant PTPN22 R620W carriers and non-carriers. PLoS One. 2017 Jul 19;12(7):e0181338.

Tien S and Yamamura Y. Cervical ectopic pregnancy: persistence despite a serologically negative ß-hCG. J Reprod Med 2015;60(5-6):257-60.

Tien S, Villines D, Parilla B. Gestational Weight Gain in Obese Patients and Adverse Pregnancy Events.  Health 2014;6:1420-1428.

Grimes K, Schulz M, Cohen S, Mullin B, Lehar S, Tien S. Pursuing Cost-Effectiveness in Mental Health Service Delivery for Youth with Complex Needs. J Ment Health Policy Econ 2011;14:73-86.

**Publications, non-peer reviewed**

Rugino A, Tien SH. Strip of the Month: Complete Heart Block Masquerading as a Reactive Nonstress Test. NeoReviews November 2018, Volume 19/Issue 11.

Rodriguez-Kovacs J, Tien SH, Plunkett BA. Selective Serotonin Reuptake Inhibitor Use in Pregnancy: Repercussions on the Oblivious Passenger. NeoReviews March 2018, Volume 19/Issue 3.

Cockrum RH, Tien SH. Strip of the Month: August 2016. NeoReviews August 2016, Volume 17/Issue 8.

Schneider P, Tien SH. Strip of the Month: February 2016. NeoReviews February 2016, Volume 17/Issue 2.

**Presentations**

Tien S, Crabtree J, Gray H, Peterson E. (2015, February). "Immunologic response to vaccine challenge in PTPN22 gene variants in pregnancy." Poster presentation at: the Society for Maternal-Fetal Medicine, San Diego, CA.

Tien S, Aguilera M. (2014, October). "Monochorionic Monoamniotic Twin Gestation: A review of antenatal management at three tertiary care centers." Poster presentation at: Central Association of Obstetricians and Gynecologists, Albuquerque, NM.

Tien S, Gray H, Jacobs K, Giacobbe L, Wagner W, Aguilera M. (2013, October). "A review of ten years' experience with placenta accreta at a single tertiary care center." Poster presentation at: Central Association of Obstetricians and Gynecologists, Napa Valley, CA.

Tien S, Gray H, Jacobs K, Giacobbe L, Swartout J, Aguilera M. (2013, October). "Spinal anesthesia converted to general anesthesia for cesarean hysterectomy is associated with improved neonatal Apgar scores versus general anesthesia alone." Poster presentation at: Central Association of Obstetricians and Gynecologists, Napa Valley, CA.

Tien S, Casserly K, Rauk P. (2013, April). "A right atrial thrombus in the setting of puerperal coagulopathy." Poster presentation at: Society for Obstetric Anesthesia and Perinatology, San Juan, Puerto Rico.

Tien S, Gray H, Jacobs K, Giacobbe L, Swartout J, Aguilera M. (2013, April). "Maternal obesity associated with clinically increased blood loss and postoperative hospital stay in patients undergoing peripartum hysterectomy." Poster presentation at: Society for Obstetric Anesthesia and Perinatology, San Juan, Puerto Rico.

Tien S, August C, Fernandez C, Dini M. (2012, October). "Metastatic colon cancer presenting as an adnexal mass." Poster presentation at: the Advocate Research Forum, Advocate Illinois Masonic Medical Center, Chicago, IL.

Tien S, Villines D, Parilla B. (2012, October). "Gestational Weight Gain in Obese Patients and Adverse Pregnancy Events." Oral presentation at: Central Association of Obstetricians and Gynecologists, Chicago, IL.

Tien S, Popper F. (2009, October). "A Retrospective Review of Misoprostol Efficacy for the Treatment of Early Pregnancy Failure." Poster presentation at: Central Association of Obstetricians and Gynecologists, Maui, HI.

Grimes K, Mullin B, Lehar S, Schulz M, Creeden M, Tien S. (2008, February). "Strength in Numbers: Using Concurrent Measurement to Guide Quality." Poster presentation at: Research and Training Center for Children's Mental Health, Tampa, FL.

# Exhibit B

**(DECLARATION OF DR. SHELLY TIEN)**



**Mission:**
To protect, promote & improve the health
of all people in Florida through integrated
state, county & community efforts.

**Ron DeSantis**
Governor

**Joseph A. Ladapo, MD, PhD**
State Surgeon General

**Vision:** To be the **Healthiest State** in the Nation

October 3, 2024

Alan Chatman & Mike Jones
WCJB-TV
6220 NW 43rd Street
Gainesville FL 32653
alan.chatman@wcjb.com
mike.jones@graymedia.com

Dear Mr. Chatman & Mr. Jones:

The Florida Department of Health has been notified that your company is disseminating a political advertisement claiming that current Florida law does not allow physicians to perform abortions necessary to preserve the lives and health of pregnant women.[1]

This claim is categorically false. Florida's Heartbeat Protection Act does not prohibit abortion if a physician determines the gestational age of the fetus is less than 6 weeks. § 390.0111(1), Fla. Stat. After 6 weeks, an abortion may be performed if "[t]wo physicians certify in writing that, in reasonable medical judgment, the termination of the pregnancy is necessary to save the pregnant woman's life or avert a serious risk of substantial and irreversible physical impairment of a major bodily function of the pregnant woman other than a psychological condition." § 390.0111(1)(a), Fla. Stat. The two-physician requirement is waived in the case of an emergency medical procedure. § 390.0111(1)(b), Fla. Stat. And while physicians must exercise professional skill, care, and diligence to preserve the life and health of a fetus in the third trimester, "if preserving the life and health of the fetus conflicts with preserving the life and health of the pregnant woman, the physician must consider preserving the woman's life and health the overriding and superior concern." § 390.0111(4), Fla. Stat.

The advertisement is not only false; it is dangerous. Women faced with pregnancy complications posing a serious risk of death or substantial and irreversible physical impairment may and should seek medical treatment in Florida. However, if they are led to believe that such treatment is unavailable under Florida law, such women could foreseeably travel out of state to seek emergency medical care, seek emergency medical care from unlicensed providers in Florida, or not seek emergency medical care at all. Such actions would threaten or impair the health and lives of these women.

Under section 386.01, Florida Statutes, "the commission of any act, by an individual, municipality, organization, or corporation . . . by which the health or life of an individual, or the health or lives of individuals, may be threatened or impaired" constitutes a "sanitary nuisance." The Department of Health,

---

[1] The advertisement is displayed on the home page of the Amendment sponsor's website under the title "Caroline." *See* https://floridiansprotectingfreedom.com/. The woman featured in the advertisement states: "The doctors knew if I did not end my pregnancy, I would lose my baby, I would lose my life, and my daughter would lose her mom. Florida has now banned abortion even in cases like mine."

**Florida Department of Health**
**Office of the General Counsel**
4052 Bald Cypress Way, Bin A-02 • Tallahassee, FL 32399-1701
PHONE: 850/245-4444 • FAX: 850/245-4790
FloridaHealth.gov



**Accredited Health Department**
Public Health Accreditation Board

**STATE OF FLORIDA**
**DEPARTMENT OF HEALTH**

upon determining the existence of such nuisance, must notify the person or persons committing the nuisance "to remove or cause to be removed the same within 24 hours." § 386.03(1), Fla. Stat. If the nuisance is not removed within the time prescribed, the Department is authorized to institute legal proceedings under section 381.0012, Florida Statutes, to obtain an injunction. § 386.03(2)(c), Fla. Stat. The Department is further authorized to "[i]nstitute criminal proceedings in the county court in the jurisdiction of which the condition exists against all persons failing to comply with notices to correct sanitary nuisance conditions." § 386.03(2)(b), Fla. Stat. Creating, keeping, or maintaining a nuisance injurious to health is a second-degree misdemeanor. § 386.051, Fla. Stat.

While your company enjoys the right to broadcast political advertisements under the First Amendment of the United States Constitution and Article I, section 4 of the Florida Constitution, that right does not include free rein to disseminate false advertisements which, if believed, would likely have a detrimental effect on the lives and health of pregnant women in Florida.

/s/ John Wilson
John Wilson
General Counsel
Florida Department of Health

2