# Exhibit C

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF FLORIDA
# TALLAHASSEE DIVISION

| | | |
|---|---|---|
| FLORIDIANS PROTECTING FREEDOM, INC., | : | |
| | : | |
| *Plaintiff*, | : | |
| | : | |
| v. | : | Case No. |
| | : | |
| JOSEPH A. LADAPO, in his official capacity as State Surgeon General, *et al.*, | : | |
| | : | |
| *Defendants*. | : | |

## DECLARATION OF SARA LATSHAW

My name is Sara Latshaw. I am over the age of 18 and fully competent to make this declaration. Under penalty of perjury, pursuant to 28 U.S.C. § 1746, I declare:

1. I am the Chair of Floridians Protecting Freedom, Inc. ("FPF"), the plaintiff in this action.

2. I have been the Chair of FPF since September 2023.

3. FPF is a Florida nonprofit corporation, organized and operating under 501(c)(4) of the Internal Revenue Code, and a Florida political committee.

4. FPF is the sponsor of the citizen initiative entitled "Amendment to Limit Government Interference with Abortion" ("Amendment 4").

5. If adopted by voters, Amendment 4 would amend the Florida Constitution to provide: "Except as provided in Article X, Section 22, no law shall prohibit, penalize, delay, or restrict abortion before viability or when necessary to protect the patient's health, as determined by the patient's healthcare provider."

6. To be eligible for placement on the general election ballot, a citizen initiative petition must be "signed by a number of electors in each of one half of the congressional districts of the state, and of the state as a whole, equal to eight percent of the votes cast in each of such districts respectively and in the state as a whole in the last preceding election in which presidential electors were chosen." Article XI, § 3, Fla. Const. Therefore, for FPF's purposes, the Amendment 4 petition needed to be signed by: (i) the number of voters equal to at least eight percent of the votes cast in at least half of Florida's 28 congressional districts, and (ii) at least 891,523 voters statewide. After months of circulating petitions, FPF submitted well over one million petition signatures and the state verified 997,035 petition signatures as valid. *See Amendment to Limit Government Interference with Abortion 23-07*, Fla. Div. of Elections,
https://dos.elections.myflorida.com/initiatives/initdetail.asp?account=83927&seqnum=1.

7. FPF spent approximately $20 million to collect these petitions and pay for the state to verify the petition signatures, as required by Florida law. On January 25, 2024, the Secretary of State confirmed that FPF secured more than the required number of certified petition signatures for placement on the 2024 General Election ballot. Cord Byrd, Fla. Dep't of State, Div. of Elections (Jan. 25, 2024), https://floridiansprotectingfreedom.com/wp-content/uploads/2024/01/DOC012524-01252024163359.pdf.

8. On October 9, 2023, Attorney General Ashley Moody petitioned the Florida Supreme Court for an opinion regarding the validity of Amendment 4, chiefly arguing that Amendment 4 did not comply with Florida law's single-subject requirements or ballot title and language obligations.

9. On April 1, 2024, the Florida Supreme Court approved Amendment 4 for placement on the ballot. *See Advisory Op. to Att'y Gen. Re: Limiting Gov't Interference with Abortion*, 384 So. 3d 122, 127, 136 (Fla. 2024).

10. Since the Supreme Court approved Amendment 4 for placement on the ballot, the State of Florida has engaged in a long and multifaceted attack on FPF and Amendment 4 to undermine Amendment 4 with the public. The State is using government resources to push its version of the "truth" about Florida's anti-abortion laws and to assert that anyone expressing a different view is "lying." Below, I recount some examples that are most directly relevant to the State of Florida's

3

current efforts to interfere with FPF's advocacy for Amendment 4 and silence FFP's efforts to communicate with voters about Amendment 4.

11. As publicly reported, law enforcement officers are targeting and intimidating voters in their own homes—knocking on their doors and asking whether they signed a petition supporting Amendment 4. One voter from Lee County recounted such an interaction with law enforcement had left him "shaken," while another voter from the same county recalled feeling "intimidated by having a law enforcement officer come to her door." Notably, not even the Lee County Sheriff was notified of the "state agency's independent investigation." Romy Ellenbogen, Justin Garcia & Lawrence Mower, *DeSantis' election police questioned people who signed abortion petitions*, TAMPA BAY TIMES (Sept. 6, 2024), https://www.tampabay.com/news/florida-politics/elections/2024/09/06/florida-abortion-amendment-petition-signature-fraud-voters/.

12. According to Florida law, a citizen initiative's ballot title and summary must be accompanied by a financial impact statement ("FIS"). *See* Fla. Stat. § 100.371(13). On June 10, 2024, in a lawsuit filed by FPF challenging the adopted FIS, the Leon County circuit court granted FPF's motion for summary judgment: finding the FIS violated Article XI, Section 5 of the Florida Constitution and section 100.371 of the Florida Statutes and ordered adoption of a valid FIS. The new FIS was drafted not by "professional staff of the House of Representatives" and "a person

4

from the Executive Office of the Governor" ("EOG"), as Florida law requires, but rather by an employee of the Heritage Foundation and a person who had left his EOG job to head a cabinet agency, and was published over the objection of the state's top economist, the one dissenting member of the newly reconstituted Financial Impact Estimating Conference ("FIEC"). This new FIS reversed the FIEC's previous findings on financial impact and ignored the court's directive to not speculate on litigation by including rank speculation about not only potential litigation challenging certain laws under the amendment, but also the potential outcome of such litigation. Because of the extraordinarily tight timelines for obtaining court review, no further litigation on the new and equally unlawful FIS was feasible. Moreover, the State's position is that an FIS is completely immune from any court review at all, no matter how admittedly unlawful it is.

13. On October 11, 2024, the Department of State, Office of Election Crimes & Security ("OECS") released an interim report "to update the Governor and the Florida Legislature on investigations concerning initiative petition fraud." *Office of Election Crimes & Security Interim Report*, FLORIDA DEPT. OF STATE (Oct. 11, 2024) files.floridados.gov/media/708442/oecs-interim-report-10-11-2024.pdf. The interim report addresses purported fraud by individual petition circulators, and seems to intimate wrongdoing by FPF, using a capacious understanding of the term "fraud." For example, OECS asserted a petition form was "obtained by fraud" if the

5

circulator told signatories that the petition would "keep the State of Florida from taking away women's rights." *Id.* at 5.

14. The State, through the Agency for Health Care Administration ("AHCA"), created a website, opposing Amendment 4.

15. This government website states that proponents of Amendment 4 are misleading Floridians. It states: "DON'T LET THE FEARMONGERS LIE TO YOU", asserts that "Current Florida Law **Protects Women**," whereas supposedly "Amendment 4 **Threatens Women's Safety**," and purports to set out a series of characterizations of the status quo in Florida as the "truth" in contrast to the summary of the Amendment 4, which it casts as a lie.

16. It is my understanding that AHCA has spent millions of dollars running television and radio advertisements promoting this website and the State of Florida's official narratives regarding its existing abortion laws and Amendment 4. For example, one "public service announcement" asserts that viewers have "probably heard a lot of misinformation about our abortion laws," that these are "lies that could convince women to not seek necessary care and put themselves at risk and that's unacceptable," and that "abortions are always available at any time to protect the life and health of mothers." *Unacceptable*, FLA. AGENCY FOR HEALTH CARE ADMIN., https://host2.adimpact.com/admo/viewer/cea0900b-2cb8-43de-a96a-5a6d4be48fec. This government advertisement also threatens that any doctor with a different

6

understanding of Florida law than the State "is committing malpractice and could lose their medical license."

17. In order for Florida voters to make an informed decision by Election Day, it is imperative that FPF be able to speak—both by advocating for Amendment 4 and advocating against arguments and representations made by Amendment 4's opposition. It is all the more important that FPF run advertisements expressing its views about Amendment 4 in the face of the substantial public relations campaign against Amendment 4 that the State is waging, because communications from the government can carry particular weight as they bear the imprimatur of being official statements.

18. As part of FPF's efforts, it is critical that FPF share the experiences and stories of individuals directly affected by Florida's extreme abortion ban. Sharing these experiences directly educates voters about why the State's characterizations of current law are not accurate in FPF's view. However, as explained below, in response to FPF highlighting one such individual's story, the State began threatening stations with criminal prosecution for airing an FPF television advertisement.

19. On October 1, 2024, FPF began running a political advertisement titled, "Caroline." This advertisement is a first-hand account of Caroline Williams, a woman who was diagnosed with stage four terminal brain cancer when she was 20 weeks pregnant. In the advertisement, Caroline explains, "The doctors knew if I did

7

not end my pregnancy, I would lose my baby, I would lose my life, and my daughter would lose her mom. Florida has now banned abortion even in cases like mine." *Yes on 4 Campaign Launches TV Ad Featuring "Caroline"*, YES ON 4 (Oct. 1, 2024), https://floridiansprotectingfreedom.com/caroline/.[1]

20. Before running this advertisement, FPF spoke with Ms. Williams to understand what had happened to her and confirm her experience. Because the advertisement is Ms. Williams's firsthand account, and she personally delivered her account in the advertisement, FPF's and my understanding is that every part of Ms. Williams's recounting of what happened to her is true.

21. The purpose of the advertisement was to reflect FPF's views and urge voters to support Amendment 4 by demonstrating—through a tragic, real-world example—that Florida's current anti-abortion laws infringe on the liberty of women and their right to make medical decisions about their own bodies and health.

22. On October 3, 2024, the Florida Department of Health (the "Department") sent a letter to media outlets across the state airing *Caroline*. FPF was initially provided with a copy of the letter by WCJB-TV in Gainesville. In this

---

[1] In full, the voiceover of the advertisement states: "*When I saw the tumor on the MRI, My first thought was… am I gonna be able to see my daughter again? The doctors knew that if I did not end my pregnancy, I would lose my baby, I would lose my life, And my daughter would lose her mom. Florida has now banned abortion… even in cases like mine. Amendment Four is gonna protect women like me. We have to vote Yes.*" The advertisement concludes with an image of the language of Amendment 4 and indicates that it is a paid political advertisement.

letter, the Department claims that the *Caroline* "advertisement is not only false; it is dangerous."

23. The Department letter goes on to assert that *Caroline* is a "sanitary nuisance"—citing section 386.01, Florida Statutes—and demands that the stations remove or cause the advertisement to be removed within 24 hours or face legal proceedings, including criminal proceedings.

24. On October 4, 2024, counsel for FPF sent a response letter to WCJB-TV, and other stations, making clear that the Department letter raised serious First Amendment concerns and confirming that *Caroline* is true.

25. On October 8, 2024, FPF learned that another station, WINK TV in Fort Myers, which received a similar demand letter from the Department, decided to remove the advertisement from their airwaves and refused to discuss the matter for several days. FPF is currently in discussions with WINK TV on the specifics of when and how Caroline will resume airing. Regardless of how these discussions resolve, FPF has lost critical time communicating with voters in the Fort Myers area.

26. FPH has devoted substantial time, money, and resources—which it would have otherwise devoted to its efforts to advocate for Amendment 4—to addressing this issue, including contacting various stations to attempt to determine whether they had received the letter and whether they were taking action based on

9

it, conferring with legal counsel, and attempting to dissuade stations from acceding to the Department's demands.

27. FPF fears that the Department will continue its efforts to deter television stations from running FPF advertisements. FPF will continue to put forth advertisements that educate voters about the lack of meaningful exceptions to Florida's extreme abortion ban.

28. For instance, *Deborah and Lee* is an FPF advertisement that began airing on October 3, 2024, and addresses a couple who learned that their child would not survive childbirth but who were forced to endure a painful pregnancy due to Florida's extreme abortion ban. *See The Yes on 4 Campaign Releases New Campaign Video Featuring a Florida Couple Not Granted Exception for Fetal Abnormality*, YES ON 4 (Oct. 3, 2024), https://floridiansprotectingfreedom.com/deborah-and-lee/.

29. FPF also intends to begin running an advertisement on digital platforms, *Anya*, that will feature a Florida woman who was miscarrying but denied access to abortion care because she was not sufficiently on the brink of death to qualify for an abortion. When she left the hospital after being denied medical care, she was forced to carry a non-viable pregnancy until she began losing significant amounts of blood in a public restroom. Only then, when Anya was rushed to the hospital in an ambulance, bleeding out, was she finally provided abortion care. This

advertisement will, like *Caroline*, tell a Florida woman's story and the dangerous and near-fatal consequences of Florida's extreme abortion ban.

30. The ability to educate voters on FPF's views on the current state of the law is essential to FPF's mission. These advertisements reflect FPF's view—rooted in undeniable reality and women's own words about their own experiences—that the exceptions to the current law, a near-total ban on abortion, are not meaningfully accessible to many patients. However, FPF fears that the Department's threats will deter television stations and digital platforms from running these advertisements.

31. I have read the Department's letter to television stations about *Caroline*. The letter states that "creating" a "nuisance injurious to health" is a second-degree misdemeanor, and suggests that *Caroline* is such a "sanitary nuisance." I understand this to mean that the Department of Health—which has enforcement authority to regulate sanitary nuisances—is officially asserting that FPF is responsible for creating a sanitary nuisance and therefore, it is asserting FPF has committed a crime. FPF fears that it will face prosecution by the Department, or other State agents, if it continues to educate voters about Amendment 4 and Florida's current law.

32. FPF also fears that stations will refuse to air *Caroline* or FPF's other advertisements in light of the State's threat to prosecute stations for airing FPF's speech.

33. As of this filing, FPF is not aware of any efforts by the Florida Department of Health, or any other state actor, to retract the letter about *Caroline* or assure broadcasters that they will not, in fact, face criminal penalties for airing FPF's advertisements.

I, Sara Latshaw, declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and recollection.

Dated: __10/15/2024_____			_____*Sara Latshaw*_____
						**Sara Latshaw**