# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF FLORIDA
# TALLAHASSEE DIVISION

**FLORIDIANS PROTECTING**
**FREEDOM, INC.,**

    *Plaintiff,*

v.                                                Case No.:  4:24cv419-MW/MAF

**JOSEPH A. LADAPO and**
**JOHN WILSON,**

    *Defendants*.
_____/

## ORDER GRANTING TEMPORARY RESTRAINING ORDER

Floridians will vote on six proposed amendments to their state constitution this election cycle, including Amendment 4, titled "Amendment to Limit Government Interference with Abortion." Voting has already begun.

The State of Florida opposes Amendment 4 and has launched a taxpayer-funded campaign against it. Floridians Protecting Freedom, Inc., the Plaintiff in this case, has launched its own campaign in favor of Amendment 4.

Plaintiff does not challenge the State's right to spend millions of taxpayer dollars opposing Amendment 4. The rub, says Plaintiff, is that the State has crossed the line from advocating against Amendment 4 to censoring speech by demanding television stations remove Plaintiff's political advertisements supporting Amendment 4 or face criminal prosecution.

Plaintiff's argument is correct. While Defendant Ladapo refuses to even agree with this simple fact, Plaintiff's political advertisement is political speech—speech at the core of the First Amendment. And just this year, the United States Supreme Court reaffirmed the bedrock principle that the government cannot do indirectly what it cannot do directly by threatening third parties with legal sanctions to censor speech it disfavors. The government cannot excuse its indirect censorship of political speech simply by declaring the disfavored speech is "false." "The very purpose of the First Amendment is to foreclose public authority from assuming a guardianship of the public mind through regulating the press, speech, and religion." *Thomas v. Collins*, 323 U.S. 516, 545 (1945) (Jackson, J., concurring). "In this field every person must be his own watchman for truth, because the forefathers did not trust any government to separate the true from the false for us." *Id*. To keep it simple for the State of Florida: it's the First Amendment, stupid.

I

Plaintiff is a Florida corporation and political committee sponsoring Amendment 4. Plaintiff has actively advocated for the passage of Amendment 4 during this year's general election and against arguments made by those who oppose Amendment 4. To that end, on October 1, 2024, Plaintiff began running an advertisement called "Caroline" on several TV stations across the state, in which a

woman recalls her decision to have an abortion in Florida in 2022. She states that she would not be able to have an abortion for the same reason under the current law.[1]

Shortly after the ad began running, John Wilson, then general counsel for the Florida Department of Health, sent letters on the Department's letterhead to Florida TV stations. The letters assert that Plaintiff's political advertisement is false, dangerous, and constitutes a "sanitary nuisance" under Florida law. The letter informed the TV stations that the Department of Health must notify the person found to be committing the nuisance to remove it within 24 hours pursuant to section 386.03(1), Florida Statutes. The letter further warned that the Department could institute legal proceedings if the nuisance were not timely removed, including criminal proceedings pursuant to section 386.03(2)(b), Florida Statutes. Finally, the letter acknowledged that the TV stations have a constitutional right to "broadcast political advertisements," but asserted this does not include "false advertisements which, if believed, would likely have a detrimental effect on the lives and health of pregnant women in Florida." At least one of the TV stations that had been running Plaintiff's advertisement stopped doing so after receiving this letter from the Department of Health.

---

[1] Yes on 4 Florida, *Caroline*, YouTube (Oct. 1, 2024), https://www.youtube.com/watch?v=7jJiEE_AkPA.

On October 16, 2024, Plaintiff filed a verified complaint with this Court, raising claims for unconstitutional coercion and viewpoint discrimination in violation of the First Amendment of the United States Constitution. ECF No. 1. Plaintiff sues Joseph Ladapo, the Surgeon General of Florida and head of the Department of Health, and John Wilson, former general counsel of the Department of Health, who signed the letters at issue. Plaintiff also filed an emergency motion for temporary restraining order directed only at Defendant Ladapo in his official capacity. ECF No. 2. In an abundance of caution, this Court set the motion for an emergency hearing on October 17, 2024, in an effort to afford Defendant Ladapo an opportunity to be heard. Both sides appeared at the hearing on October 17th with their counsel of choice. Accordingly, having afforded both sides an opportunity to be heard on an expedited basis, this Order now follows.

II

Temporary restraining orders, like preliminary injunctions, are emergency measures that preserve the status quo pending a fuller hearing on the injunctive relief requested. *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1229 (11th Cir. 2005). To obtain a temporary restraining order, a plaintiff must demonstrate that (1) they are likely to succeed on the merits of their claim, (2) they are likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of the equities tips in their favor, and (4) an injunction is in the public interest. *Ingram v. Ault*, 50

F.3d 898, 900 (11th Cir. 1995). The Plaintiff must "clearly establish[] the burden of persuasion as to the four prerequisites." *Schiavo*, 403 F.3d at 1231 (internal quotations omitted). None of the four elements are controlling. This Court must consider the elements jointly, and a strong showing of one element may compensate for a weaker showing of another. *Fla. Med. Ass'n, Inc. v. U.S. Dep't of Health, Educ. & Welfare*, 601 F.2d 199, 203 n.2 (5th Cir. 1979).[2]

A

Having set forth this standard, this Court begins with whether Plaintiff has shown a substantial likelihood of success on the merits. This Court addresses this factor first because, typically, if a plaintiff cannot "establish a likelihood of success on the merits," this Court "need not consider the remaining conditions prerequisite to injunctive relief." *Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242, 1247 (11th Cir. 2002). And because standing is always "an indispensable part of the plaintiff's case," this Court begins its merits analysis with standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

Over time, the Supreme Court has developed a three-part test for determining when standing exists. Under that test, a plaintiff must show (1) they have suffered an injury in fact that is (2) traceable to the defendant and that (3) can likely be

---

[2] Decisions of the Fifth Circuit prior to October 1, 1981 are binding within the Eleventh Circuit. *Bonner v. City of Pritchard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

redressed by a favorable ruling. *See Lujan*, 504 U.S. at 560–61. And where a plaintiff moves for emergency injunctive relief, "the district court . . . should normally evaluate standing 'under the heightened standard for evaluating a motion for summary judgment.' " *Waskul v. Washtenaw Cnty. Cmty. Mental Health*, 900 F.3d 250, 255 (6th Cir. 2018) (quoting *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 912 (D.C. Cir. 2015)); *see also Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 404 (2d Cir. 2011). Thus, "a plaintiff cannot 'rest on such mere allegations, [as would be appropriate at the pleading stage] but must set forth by affidavit or other evidence specific facts, which for purposes of the summary judgment motion will be taken to be true.' " *Cacchillo*, 638 F.3d at 404 (some alteration in original) (quoting *Lujan*, 504 U.S. at 561).

This Court finds that Plaintiff has demonstrated standing for purposes of the present motion. Plaintiff alleges two theories of injury. First, Plaintiff alleges its right to free expression has been chilled because it "reasonably fears the State will take action [] against FPF itself." ECF No. 2 at 14. Second, Plaintiff alleges that it "suffered from an injury because WINK TV stopped running [Plaintiff's] advertisement in the face of the State's threats." *Id.*

As to Plaintiff's first theory—that it is injured because its right to free speech has been chilled by a credible threat of prosecution—Plaintiff has shown injury in fact. In a pre-enforcement challenge like this one, a plaintiff satisfies the injury-in-

6

fact requirement where it alleges "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014) (citation omitted). Here, Defendant's "past conduct and its threat of future enforcement is enough to meet the injury-in-fact requirement." *LaCroix v. Town of Fort Myers Beach*, 38 F.4th 941, 947 (11th Cir. 2022). Plaintiff faces a credible threat of prosecution as evidenced by Defendant's letter, which states Plaintiff's "Caroline" ad violates section 386.01, and Defendant may institute civil and criminal proceedings against those who violate the statute. ECF No 1-1; ECF No. 1-3 ¶ 23. Defendant's threat of prosecution is not limited to the TV stations who received the letter—it includes all "persons committing the nuisance" and "failing to comply with notices to correct" nuisance conditions. ECF No. 1-1. Plaintiff intends to continue educating voters and promoting its ad, and "fears that it will face prosecution by the Department, or other State agents, if it continues" to do so. ECF No. 1-3 ¶¶ 25, 27, 31. This is sufficient to demonstrate injury in fact.[3]

---

[3] At the hearing, Defendant posited that Plaintiff must allege it will cease speaking to show injury in fact. Not so. When First Amendment rights are involved, courts apply the injury-in-fact requirement loosely, "lest free speech be chilled even before the law or regulation is enforced." *Harrell v. The Fla. Bar*, 608 F.3d 1241, 1254 (11th Cir. 2010).

Defendant offers *Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013) for the proposition that Plaintiff has not alleged a required "certainly impending" injury. But the *Clapper* plaintiffs' fear of enforcement was predicated on a "highly attenuated chain of possibilities," including whether their foreign contacts would be targeted and whether the challenged statute would be used. *Id.* at 410. Plaintiff need not engage in such guesswork here. Defendant's own letter targets Plaintiff's "Caroline" ad by name, states it is illegal, and threatens that Defendant can and will proceed with civil and criminal prosecution against violators. ECF No. 1-1. Plaintiff has shown "a threat of specific future harm" as required by *Clapper*, *id.* at 417–18.

Having found Plaintiff has established injury-in-fact, this Court also finds that this injury is traceable to Defendant Ladapo. The letter reminds the reader that Defendant Ladapo's agency, the Department of Health, may "institute legal proceedings . . . to obtain an injunction" and "[i]nstitute criminal proceedings" against persons responsible for a sanitary nuisance—like the "Caroline" ad created and distributed by Plaintiffs. ECF No. 1-1; §§ 386.03, 381.0012, 381.0061, Fla. Stat. (2024). Further, Plaintiff has shown its injury would be redressed through this litigation. *See Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 287 (2008). For the same reasons Plaintiff's injury is traceable to Defendant Ladapo, an injunction prohibiting Defendant Ladapo, in his official capacity, from taking further action under section 386 would provide redress by removing the credible threat of

8

prosecution that hangs over Plaintiff's speech. Accordingly, Plaintiff has satisfied all three elements of Article III standing to proceed with its motion for a temporary restraining order on its First Amendment claim. Because Plaintiff has already satisfied the elements of standing for its motion for temporary restraining order, this Court need not decide Plaintiff's second standing theory—that it is injured by WINK TV's removal of its ad—at this juncture.

B

Next, this Court addresses the merits of Plaintiff's First Amendment claims. At the hearing, Defendant led with the argument that laws of general applicability are immune from First Amendment challenge. Nonsense. The line of cases Defendant cites to support this dubious argument are readily distinguishable from this case. Defendant's cases addressed a different issue—namely, whether enforcement of a law of general applicability against the press, which incidentally affects the press's ability to gather and report the news, offends the First Amendment. *See, e.g.*, *Cohen v. Cowles Media Co.*, 501 U.S. 663, 669 (1991); *Villieux v. Nat'l Broad. Co.*, 206 F.3d 92 (1st Cir. 2000); *Food Lion v. Cap. Cities/ABC*, 194 F.3d 505 (4th Cir. 1999). That is not this case. The issue here is whether the State can censor core political speech under the guise that the speech is false and implicates public health concerns. When state action "burdens a fundamental right such as the First Amendment, rational basis yields to more

9

exacting review." *NAACP v. City of Philadelphia*, 834 F.3d 435, 443 (3d Cir. 2016). With limited exceptions not applicable here,[4] a government restriction on speech is subject to strict scrutiny if it is content based. *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015).

Government regulation of speech is content based if a law "applies to particular speech because of the topic discussed or the idea or message expressed." *Id.* A "reliable way" to assess whether a regulation is content based is to ask "whether enforcement authorities must examine the content of the message that is

---

[4] A few "limited categories of speech are traditionally unprotected—obscenity, fighting words, incitement, and the like." *Honeyfund.com, Inc. v. Governor*, 94 F.4th 1272, 1277 (11th Cir. 2024) (quoting *Brown v. Ent. Merchs. Ass'n*, 564 U.S. 786, 791 (2011)). "But what counts as unprotected speech starts and ends with tradition—'new categories of unprotected speech may not be added to the list by a legislature that concludes certain speech is too harmful to be tolerated.'" *Id.* But Defendant has not demonstrated that the political speech at issue falls within any of these categories. It is not commercial speech subject to a more relaxed standard permitting some government regulation, nor is it obscene, nor is it inciting speech that will imminently lead to harm to the government or the commission of a crime.

Defendant argues this is dangerous and misleading speech that could cause pregnant women harm in Florida. But there is no "general exception to the First Amendment for false statements." *United States v. Alvarez*, 567 U.S. 709, 718 (2012) (plurality opinion). Falsity alone does not bring speech outside the First Amendment absent some other traditionally recognized, legally cognizable harm. *Id.* at 718–722. That is because "it is perilous to permit the state to be the arbiter of truth." *Alvarez*, 567 U.S. at 752 (Alito, J., dissenting).

Defendant seeks to fit a square peg into a round hole by suggesting that Plaintiff's speech is unprotected because it poses an "imminent threat" to public health. But this argument fails too. Speech is unprotected as an "imminent threat" when it incites or produces imminent lawless action, or poses a clear and present danger by bringing about the "substantive evils" that the government has a right to prevent, like obstacles to military efforts, obscenity, acts of violence, and charges to overthrow the government. *Brandenburg v. Ohio*, 395 U.S. 444, 447 (1969); *Near v. Minnesota ex rel. Olson*, 283 U.S. 697, 716 (1931). But there is no suggestion that Plaintiff's ad would bring about the "substantive evils" that the Supreme Court has recognized, nor is there any suggestion that Plaintiff's ad would cause individuals to take any imminent lawless action.

conveyed to know whether the law has been violated." *Honeyfund.com, Inc. v. Governor*, 94 F.4th 1272, 1278 (11th Cir. 2024). The government engages in "the greatest First Amendment sin"—viewpoint discrimination—when it targets not just a subject matter, but "particular views taken by speakers" on that subject matter. *Id.* at 1277–78.

By threatening criminal proceedings for broadcasting a "political advertisement claiming that current Florida law does not allow physicians to perform abortions necessary to preserve the lives and health of pregnant women," ECF No. 1-1 at 2, Defendant has engaged in viewpoint discrimination. The letter sent by the Department of Health to broadcasters claimed that Plaintiff's ad violated Florida's sanitary nuisance statute because, "if believed, [it] would likely have a detrimental effect on the lives and health of pregnant women in Florida." *Id.* at 3. Defendant would not be able to conclude that the ad may have a detrimental effect on the lives and health of pregnant women in Florida without reference to the particular view taken by the speaker—namely, that "Florida has now banned abortion even in cases like mine." *Id.* at 2, n.1.

Even if the Department of Health's actions here did not amount to viewpoint discrimination, where a government uses the "threat of invoking legal sanctions and other means of coercion . . . to achieve the suppression" of disfavored speech, it functionally creates "a system of prior administrative restraints" that bears "a heavy

11

presumption against its constitutional validity." *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 67, 70 (1963). A government official "cannot do indirectly what [he] is barred from doing directly: . . . coerce a private party to punish or suppress disfavored speech on [his] behalf." *Nat'l Rifle Ass'n v. Vullo*, 602 U.S. 175 (2024). The present case bears all the hallmarks of unconstitutional coercion that the Supreme Court identified in *Bantam Books* and *Vullo*.

First, Defendant has enforcement authority that would cause a reasonable person to perceive their official communication as coercive. As cited in the letter, the Department of Health has the authority, if an identified nuisance is not removed within 24 hours, to institute criminal proceedings against all persons failing to comply. § 386.03(2)(b), Fla. Stat. Second, the communication can reasonably be understood as a threat. While the "threat need not be explicit," *Vullo*, 602 U.S. at 193, here it was all but: the letter quoted Plaintiff's ad, labeled it as dangerous, suggested that it could threaten the health of women in Florida, identified any act that could threaten or impair the health of an individual as a "sanitary nuisance," and noted the Department's power under Florida law to criminally prosecute all persons who failed to remove a sanitary nuisance within 24 hours. ECF No. 1-1 at 2–3. A reasonable person would have no trouble connecting the dots to identify this as a

12

threat. Finally, the reaction from one broadcaster to cease airing the ad after receiving the letter is further evidence of its coercive nature.[5]

To overcome the presumption of unconstitutionality, Defendant must show that his actions were narrowly tailored to serve a compelling government interest.[6] *See Reed*, 576 U.S. at 163. This is a high bar in any case, and so here. Even assuming arguendo that Plaintiff's advertisement is "categorically false," ECF No. 1-1 at 2, and that countering it is a compelling government interest, Defendant's actions are not narrowly tailored. As the Supreme Court identified in *Alvarez*, the narrowly tailored solution to alleged falsehoods is counterspeech. 567 U.S. at 726 (plurality opinion). That is because the First Amendment embodies a "profound national

[5] When asked why this case was not governed by *Vullo*, Defendant's response was that *Vullo* concerned the state exercising its regulatory authority "in an effort to stop the NRA from engaging in constitutionally protected speech." But "the difference here," he argued, is that "the specific words being expressed" in this case don't fall "within the ambit of the First Amendment." ECF No. 23 at 36–37. But that is beside the point. In *Bantam Books*, on which *Vullo* relied, the state threatened enforcement on the basis that the speech was allegedly obscene—which the Supreme Court acknowledged was "not within the area of constitutionally protected speech or press." 372 U.S. at 59, 65. Here, as discussed above, Defendant has not even shown that the speech falls within one of the "traditionally unprotected" categories, let alone that such a distinction would remove this case from the ambit of *Vullo* and *Bantam Books*.

[6] As discussed above, Defendant's actions are presumptively unconstitutional whether analyzed as viewpoint discrimination or unconstitutional coercion to suppress speech. Viewpoint discrimination may be per se unconstitutional, *see Honeyfund.com*, 94 F.4th at 1278, but at a minimum, it is subject to strict scrutiny, *see Reed*, 576 U.S. at 163. The Supreme Court in *Bantam Books* declared that coercive threats created a system of prior restraint bearing a heavy presumption of unconstitutionality but did not identify a standard of review. 372 U.S. at 70. *Vullo*, considered at the motion-to-dismiss stage, simply stated that "a government entity's 'threat of invoking legal sanctions and other means of coercion . . . to achieve the suppression' of disfavored speech" violates the First Amendment. 602 U.S. at 180. Because the Supreme Court has not clearly identified the standard of review applicable to these cases, this Court applies strict scrutiny.

commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open." *Honeyfund.com Inc.*, 94 F.4th at 1283. For all these reasons, Plaintiff has demonstrated a substantial likelihood of success on the merits.

C

As explained above, in addition to the likelihood of success on the merits, three other factors influence the propriety of a temporary restraining order—namely, whether "irreparable injury will be suffered if the relief is not granted," whether "the threatened injury outweighs the harm the relief would inflict on the" Defendant, and "whether entry of the relief would serve the public interest." *Schiavo*, 403 F.3d at 1225–26.

A First Amendment violation does not automatically require a finding of irreparable injury. However, when the injury flowing from the violation constitutes "direct penalization, as opposed to incidental inhibition of First Amendment rights," the injury cannot "be remedied absent an injunction." *KH Outdoor, LLC v. City of Trussville*, 458 F.3d 1261, 1272 (11th Cir. 2006) (quoting *Hohe v. Casey*, 868 F.2d 69, 72–73 (3d Cir. 1989) (internal quotation marks omitted)). Here, Plaintiff has shown a substantial likelihood of proving an ongoing violation of its First Amendment rights through the threatened direct penalization of its political speech. Therefore, this case involves a corresponding irreparable injury that cannot be remedied without an injunction. Plaintiff intends to engage in protected activity that

is at serious threat of prosecution—namely, advocating in favor of Amendment 4 by running its "Caroline" ad in the final days leading up to the general election. But Defendant is threatening to prosecute anyone that continues to broadcast Plaintiff's political speech. One television station has pulled Plaintiff's political advertisement from broadcast. Accordingly, this Court finds that Plaintiff has satisfied the irreparable injury prong for a preliminary injunction.

Likewise, the balance of hardships favors Plaintiff. This case pits the right to engage in political speech against the State's purported interest in protecting the health and safety of Floridians from "false advertising." It is no answer to suggest that the Department of Health is merely flexing its traditional police powers to protect health and safety by prosecuting "false advertising"—if the State can rebrand rank viewpoint discriminatory suppression of political speech as a "sanitary nuisance," then any political viewpoint with which the State disagrees is fair game for censorship. Moreover, the record demonstrates that Defendant has ample, constitutional alternatives to mitigate any harm caused by an injunction in this case. The State of Florida has actively undertaken its own anti-Amendment 4 campaign to educate the public about its view of Florida's abortion laws and to correct the record, as it sees fit, concerning pro-Amendment 4 speech. The State can continue to combat what it believes to be "false advertising" by meeting Plaintiff's speech with its own.

15

Similarly, this Court is persuaded that an injunction, at this juncture, would not be adverse to the public interest. Instead, this Court finds that enjoining the Defendant from threatening further enforcement against protected speech, "would advance the public's interest in freedom of speech." *FF Cosmetics*, 866 F.3d at 1298. Of course, the Surgeon General of Florida has the right to advocate for his own position on a ballot measure. But it would subvert the rule of law to permit the State to transform its own advocacy into the direct suppression of protected political speech.

* * *

Whether it's a woman's right to choose, or the right to talk about it, Plaintiff's position is the same—"don't tread on me." Under the facts of this case, the First Amendment prohibits the State of Florida from trampling on Plaintiff's free speech.

Accordingly,

**IT IS ORDERED:**

1. Plaintiff's motion for a temporary restraining order, ECF No. 2, is **GRANTED**.

2. Defendant Ladapo is temporarily enjoined from taking any further actions to coerce, threaten, or intimate repercussions directly or indirectly to television stations, broadcasters, or other parties for airing Plaintiff's speech, or undertaking enforcement action against Plaintiff for running political

16

advertisements or engaging in other speech protected under the First Amendment.

3. This order expires at 5:00 p.m. (ET) on October 29, 2024.[7]

4. The Clerk shall notice this matter for a preliminary injunction hearing at 9:00 a.m., October 29, 2024.

**SO ORDERED on October 17, 2024.**

                                                           s/Mark E. Walker  
                                                           **Chief United States District Judge**

---

[7] This is well within the 14 days permitted under Rule 65.