# EXHIBIT E

**IN THE SECOND JUDICIAL CIRCUIT COURT
IN AND FOR LEON COUNTY, FLORIDA**

FLORIDIANS PROTECTING
FREEDOM, INC.,

     *Plaintiff,*

v.                       Case No. _____

AGENCY FOR HEALTH CARE
ADMINISTRATION,

     *Defendant.*

_____/

## EMERGENCY MOTION FOR TEMPORARY INJUNCTION AND MEMORANDUM OF LAW

Plaintiff Floridians Protecting Freedom, Inc. ("FPF") seeks the issuance of a temporary injunction to immediately (1) stop the unlawful and unconstitutional spread of misinformation about Amendment 4 through any websites, radio spots, or television advertisements by the Agency for Health Care Administration ("AHCA") and its agents; and (2) to prevent AHCA from spending any public funds or using, distributing, or making available any other materials containing misinformation about Amendment 4 or interfering with the right of Florida citizens to propose and vote on constitutional amendments.

## STATEMENT OF THE CASE

In the final weeks before the election, AHCA has created a website[1] and placed television[2] and radio advertisements[3] to interfere with the upcoming vote on Amendment 4, the Amendment to Limit Government Interference with Abortion, through a state-sponsored misinformation

---

[1] A screenshot of the website is attached to the Complaint as Exhibit A.
[2] AHCA shared the ad on x.com and it has also been broadcast on television; it can be viewed at https://bit.ly/AHCATVad.
[3] The radio ad can be accessed at https://bit.ly/AHCARadioAd.

campaign. With vote-by-mail ballots scheduled to be mailed in less than two weeks, AHCA is grossly misrepresenting what the Amendment would do, making allegations that are explicitly refuted by the language of the Amendment itself, and misleading voters through both inaccurate statements and through omission of countervailing information. Indeed, AHCA is using this taxpayer-funded campaign to spread mistruths about the Amendment that were already considered and rejected by the Florida Supreme Court in litigation over Amendment 4's ballot title and summary. AHCA's urging voters to oppose an amendment proposed by its citizens through such a misinformation campaign violates the Florida Constitution and the political power that has been reserved to the people, and therefore must be enjoined.

1.  **Floridians Protecting Freedom is exercising its right to propose Amendment 4 to the Florida Constitution.**

Floridians Protecting Freedom is the sponsor of Amendment 4, a proposed citizen-initiated amendment to the Florida Constitution. Pursuant to article XI, section 3 of the Florida Constitution, FPF filed with the Secretary of State 997,035 verified petition signatures of Florida voters who wish to vote on Amendment 4. The Supreme Court reviewed the ballot title and summary and found that they met the Florida Constitution's accuracy and clarity requirements for amendments. During that review, the State—through the Attorney General— and opponents to Amendment 4 argued that its summary was misleading and therefore should not be on the ballot. The Supreme Court rejected those arguments and permitted the amendment to be placed on Florida ballots for voters to vote on. This vote will begin in less than two weeks, as voters begin receiving their vote-by-mail ballots.

If adopted by Florida voters, Amendment 4 would create a new section in Article I of the Constitution providing:

Limiting  government  interference  with  abortion.—  Except  as

> provided in Article X, Section 22, no law shall prohibit, penalize, delay, or restrict abortion before viability or when necessary to protect the patient's health, as determined by the patient's healthcare provider.

Amendment 4's ballot title and summary, echoing the provision it seeks to add to the constitution, provides:

> **Amendment to Limit Government Interference with Abortion**
>
> No law shall prohibit, penalize, delay, or restrict abortion before viability or when necessary to protect the patient's health, as determined by the patient's healthcare provider. This amendment does not change the Legislature's constitutional authority to require notification to a parent or guardian before a minor has an abortion.

## 2. AHCA is unlawfully using state resources to mislead voters about the impact of Amendment 4.

The State has continued to oppose Amendment 4 and has unlawfully weaponized taxpayer resources to do so. Its latest effort is a misinformation campaign retooling an AHCA website initially established to help Floridians research healthcare costs and compare prices to to instead spread misinformation about Amendment 4 and abortion laws in Florida—and then using television and radio advertisements to drive voters to the deceptive website. Through this website, AHCA disparages Amendment 4 and Floridians Protecting Freedom as its sponsor, alleging fearmongering and lying. AHCA presents voters with false information about Amendment 4 and current law and creates a sense of urgency that "Current Law **Protects Women.** Amendment 4 **Threatens Women's Safety**," that Amendment 4 will "lead to unregulated and unsafe abortions," and "We must keep Florida from becoming an **abortion tourism destination state**." Voters can only be left with the impression that this state agency is advising them to vote no on Amendment 4. Such use of public resources and involvement of state civil servants and officers to campaign against Amendment 4 violates various provisions of state law, and, accordingly, these political

advertisements constitute unfair use of AHCA's power and the public funds and resources entrusted to it to interfere with FPF's right to propose an amendment to the Florida Constitution.

Simply, the website now does not contain healthcare information or data to help Floridians compare healthcare prices; it contains express advocacy against Amendment 4. In addition to being an obvious political ad against Amendment 4, the website is riddled with misinformation about Amendment 4, many of which have already been refuted by the State, including the Supreme Court. A few examples are outlined below:

a. The website falsely claims that Amendment 4's ballot title and summary are deceptive. But the Supreme Court found—*as a matter of law*—that "the ballot title and summary fairly inform voters, in clear and unambiguous language, of the chief purpose of the amendment and they are not misleading." *Advisory Op. to Att'y Gen. re Limiting Gov't Interference with Abortion*, 384 So. 3d 122, 136 (Fla. 2024).

b. The website falsely claims that Amendment 4's use of the terms 'viability,' 'health,' and 'healthcare provider' are "open-ended and arbitrary," despite the fact that the terms are used in Florida statutes and that the Florida Supreme Court found that arguments that these terms were misleading were incorrect *as a matter of law. Limiting Gov't Interference*, 384 So. 3d at 136. For example, "viability," rather than being open-ended or arbitrary, is explicitly defined in Florida law as "the stage of fetal development when the life of a fetus is sustainable outside the womb through standard medical measures." § 390.011, Fla. Stat.

c. The website falsely claims that Amendment 4 would allow abortions for any reason at any time, specifically arguing that FPF has not disputed this claim, despite the fact that the Supreme Court found that Amendment 4 would allow the Legislature to limit access

to abortion after viability if the abortion was not necessary to protect the patient's health. *Limiting Gov't Interference*, 384 So. 3d at 134.

d. The website falsely claims that Amendment 4 would repeal current Florida laws protecting women from "dangerous and unsanitary conditions," despite Amendment 4 limiting only laws that "prohibit, penalize, delay or restrict" pre-viability abortions or abortions needed to protect patient health.

e. The website falsely claims that "Sponsors of Amendment 4 have Not Disputed it Would Allow: Minors to obtain an abortion without their parents' knowledge," despite the Florida Supreme Court recognizing that the plan text of the amendment preserves the Legislature's authority to require parents be notified *before* a minor receives an abortion. *Limiting Gov't Interference*, 384 So. 3d at 134.

And despite being established to provide Floridians easy access to health data and comparisons of the prices of healthcare procedures, AHCA's website presents voters with misinformation about reality and current law. A few examples are outlined below:

a. The website misleads voters into the belief that abortion is broadly available, stating that "Each year in Florida 83,000 abortions are performed," despite the fact that this figure predates the current ban which criminalizes abortion six weeks after a woman's last menstrual period.

b. The website, and radio and television ads promoting it, falsely claim that "After viability (when the fetus can survive outside the womb), abortions are allowed if necessary to protect the patient's health, as decided by their healthcare provider." Florida law prohibits such abortions unless two physicians certify in writing that the abortion is necessary to avert a serious risk of substantial and irreversible physical

impairment of a major bodily function of the pregnant woman other than a psychological condition." § 390.011, Fla. Stat. Multiple public cases illustrate that, in reality, women are being denied access to abortions needed to protect their health and even access to treatment for miscarriages due to the current ban. *See, e.g.,* Caroline Kitchener, *Two Friends Were Denied Care After Florida Banned Abortion. One Almost Died,* WASH. POST (Apr. 10, 2023), https://www.washingtonpost.com/politics/2023/04/10/pprom-florida-abortion-ban (attached to the Complaint as Exhibit B).

This egregious interference in the democratic process infringes on the political power the people reserved to themselves through Article I, section 1 and their right to propose amendments to the Florida Constitution through ballot initiative under Article XI, section 3. Accordingly, this Court should declare that AHCA's actions violate FPF's right to propose revisions and amendments to Florida's Constitution, order AHCA to remove any advertising or materials that violate FPF's rights, and enjoin AHCA from disseminating such advertising or other materials in the future.

## ARGUMENT

### 1. Standard for Granting an Emergency Motion for Injunctive Relief

The purpose of a temporary injunction is "to preserve the property or rights *in statu quo*, until a satisfactory hearing upon the merits, without expressing and indeed without having the means of forming an opinion as to such rights." *Byrd v. Black Voters Matter Capacity Bldg. Inst.*, 339 So. 3d 1070, 1075 (Fla. 1st DCA 2022) (quoting *Sullivan v. Moreno*, 19 Fla. 200, 215 (1882)). While a temporary injunction does not resolve disputes, it is used "prevent irreparable harm by maintaining status quo until a final hearing can occur when full relief may be given." *Id.* at 1078 (quoting *Michele Pommier Models, Inc. v. Diel*, 886 So. 2d 993, 995–96 (Fla. 3d DCA 2004)).

The status quo is "the last actual, peaceable, noncontested condition which preceded the pending controversy." *Id.* (quoting *Bowling v. Nat'l Convoy & Trucking Co.*, 135 So. 541, 544 (Fla. 1931)). In this case, the status quo is the absence of AHCA's promotion of misinformation regarding Amendment 4 on its website and in television and radio advertisements. This status quo must be frozen in order to prevent the further injury to FPF during the pendency of this litigation.

To obtain a temporary injunction, the movant must "establish[] four elements: (1) a substantial likelihood of success on the merits, (2) the unavailability of an adequate remedy at law, (3) irreparable harm absent entry of an injunction, and (4) that the injunction would serve the public interest." *Fla. Dep't of Health v. Florigrown*, 317 So. 3d 1101, 1110 (Fla. 2021) (citations omitted). As set forth below, FPF satisfies these four requirements. A temporary injunction is necessary to preserve the status quo and ensure that FPF is not subjected to continued harm to its right to propose an amendment to the state constitution and have a fair vote on such.

### 2. Floridians Protecting Freedom has a substantial likelihood of success on the merits.

FPF has a substantial likelihood of success on the merits because AHCA's actions violate its constitutional rights. FPF and its supporters, like all Floridians, have a right to propose an amendment to the Florida Constitution pursuant to article XI, section 3 of the Florida Constitution, and to have that amendment submitted to voters. Art. XI, § 5, Fla. Const. The law is clear that this right affords FPF a path to "bypass legislative and executive control and to provide the people of Florida a narrow but direct voice in amending their fundamental organic law." *Browning v. Fla. Hometown Democracy*, 29 So. 3d 1053, 1063 (Fla. 2010). Likewise, "[i]t remains a basic legal principle that 'no department . . . has unlimited power under our system of government.'" *Id.* at 1064 (quoting *Sylvester v. Tindall*, 18 So. 2d 892, 899 (Fla. 1944)). As such, the executive branch has a "limited role" in this "additional check and balance against legislative and executive power."

*Id.* at 1063–64.

Furthermore, no fewer than three Florida statutes illustrate that the policy of this state is to prohibit the use of state resources to influence the outcome of elections, further illustrating that this is not a constitutional use of AHCA's power. §§ 104.31(a) ("No officer . . . shall use his or her official authority or influence for the purpose of interfering with an election . . . or coercing or influencing another person's vote"), 110.233 ("no employee in the career service shall: (a) . . . take any active part in a political campaign while on duty . . . [or] (b) Use the authority of his or her position to secure support for, or oppose, any . . . issue in a partisan election or affect the results thereof."), 1001.26(3)(a), Fla. Stat. (If an educational television station is "supported in whole or in part by state funds," its "facilities, plant, or personnel . . . may not be used directly or indirectly for the promotion, advertisement, or advancement of a political candidate for a municipal, county, legislative, congressional, or state office . . . . This paragraph applies to the advocacy for, or opposition to, a specific existing or proposed program of governmental action, which includes, but is not limited to, constitutional amendments . . . .")

While it is not for this court to decide whether AHCA has violated these laws and courts generally do not enjoin the commission of crimes, "[t]here is a manifest distinction between enjoining an individual from committing a crime and enjoining the owner of property, or its possessor, from allowing his property to injure others." *Pompano Horse Club v. State*, 111 So. 801, 809 (Fla. 1927). An injunction in this case would "restrain[] defendant[] from so using their property as to make it a nuisance to others," but "not punish the defendant for what he has done. That is left to the criminal courts." *Id*. AHCA does not have the authority to use state resources to campaign against Amendment 4, including spreading false information about the amendment, and such activities impinge on FPF's exercise of these constitutional rights.

### 3.  There is no adequate remedy at law.

There is no question that FPF lacks an adequate remedy at law. Just as "there is no adequate legal remedy at law for the improper enforcement of [an unconstitutional law]," there is no adequate legal remedy at law for AHCA's unconstitutional actions. *Gainesville Woman Care v. State*, 210 So. 3d 1243, 1264 (Fla. 2017), *receded from on other grounds by Planned Parenthood of Sw. & Cent. Fla. v. State*, 384 So. 3d 67 (Fla. 2024).

### 4.  Floridians Protecting Freedom is being and will continue to be irreparably harmed absent entry of an injunction.

"The law recognizes that a continuing constitutional violation, in and of itself, constitutes irreparable harm." *Bd. of Cnty. Comm'rs, Santa Rosa Cnty. v. Home Builders Ass'n of W. Fla.*, 325 So. 3d 981, 985 (Fla. 1st DCA 2021) (quoting *Fla. Dep't of Health v. Florigrown*, 320 So. 3d 195, 200 (Fla. 1st DCA 2019), *quashed on other grounds*, 317 So. 3d 1101 (Fla. 2021)). FPF is currently being harmed by AHCA's unlawful action and, absent the entry of an injunction, FPF will continue to be irreparably harmed as AHCA abuses its power to interfere in the upcoming vote on FPF's proposed amendment by flooding voters with misinformation about the amendment FPF supports. The harm is heightened even more because the election quickly approaches; Floridians will start voting by mail in a little over a week; Election Day is in less than eight weeks. AHCA is "manipulat[ing] the public based solely upon whether [it] favors or disfavors a proposal." Such "[s]care tactics and vague unsupported predictions [] have no place in this constitutional-amendment process." *Advisory Op. to Att'y Gen. re Standards for Establishing Legis. Dist. Boundaries*, 2 So. 3d 161, 165 (Fla. 2009). Absent an injunction, AHCA will continue disseminating its dishonest attack on FPF's proposed amendment. This would require FPF to continue diverting substantial resources to further combat AHCA's misinformation campaign.

**5.  An injunction will serve the public interest.**

A temporary injunction in this case will pause AHCA's misinformation communication campaign during the pendency of this litigation, which will best serve the public interest and ensure this court can resolve this dispute. As discussed above, the policy of this state is for the people, in whom all political power is inherent, to have the power to propose amendments to the state constitution without interference from the executive branch. Art. I, § 1, Art. XI, §§ 3, 5, Fla. Const. The public has a clear and substantial interest in preventing AHCA from impeding this right. By granting this injunction, the right of the people to amend their constitution without government interference will be preserved. Furthermore, as discussed above, multiple state statutes illustrate that Florida state policy is to prohibit the use of state resources to influence the outcome of elections, further illustrating that the public interest would be served by the issuance of an injunction. §§ 104.31(a), 110.233, 1001.26(3)(a), Fla. Stat.

**6.  The Court Should Impose a Bond No Greater than $5,000.**

A bond is required whenever a court enters a temporary injunction, but this Court has discretion to determine the proper bond amount. Fla. R. Civ. P. 1.610(b). "The purpose of an injunction bond is to provide a sufficient fund to reimburse costs and damages to the adverse party if it is ultimately determined that the injunction was issued wrongfully." *Neal v. Neal*, 636 So. 2d 810, 813 (Fla. 1st DCA 1994) (citing *Cushman & Wakefield, Inc. v. Cozart*, 561 So.2d 368, 370 (Fla. 2d DCA 1990)). Here, the Court should order an injunction bond of no greater than $5,000. Even if an appellate court later overturns the injunction, AHCA will not have incurred monetary damages because of this Court's temporary injunction. Any costs AHCA faces arise from the need to litigate the unconstitutionality of AHCA's actions, not the issuance of an injunction enjoining those actions.

**CONCLUSION**

As demonstrated above, FPF has shown a substantial likelihood of success on the merits in proving that AHCA's actions interfere with the exercise of FPF's right to propose an amendment to the state constitution, that FPF is incurring irreparable harm and will continue to do so if AHCA's misinformation campaign is not enjoined, that FPF lacks an adequate remedy at law, and that the relief requested will serve the public interest. Thus, this Court should issue a temporary injunction enjoining AHCA and its agents from (1) continuing to spread misinformation about Amendment 4 through any websites, radio spots, or television advertisements by AHCA and its agents; and (2) spending any public funds or using, distributing, or making available any other materials containing misinformation about Amendment 4 or interfering with the right of Florida citizens to propose and vote on constitutional amendments.

Respectfully submitted September 12, 2024,

 /s/ Nicholas L.V. Warren

Daniel Marshall (FBN 617210)
Jodi Siegel (FBN 511617)
**Southern Legal Counsel, Inc.**
1229 NW 12th Avenue
Gainesville, FL 32601
(352) 271-8890
dan.marshall@southernlegal.org
jodi.siegel@southernlegal.org

Margaret Good (FBN 97931)
**Margaret Good Law, PLLC**
P.O. Box 5083
Sarasota, FL 34277
(941) 313-7485
margaret@margaretgoodlaw.com

Michelle Morton (FBN 81975)
Daniel B. Tilley (FBN 102882)
**ACLU Foundation of Florida**
4343 West Flagler Street, Suite 400
Miami, FL 33134
(786) 363-2714
mmorton@aclufl.org
dtilley@aclufl.org

Nicholas L.V. Warren (FBN 1019018)
**ACLU Foundation of Florida**
1809 Art Museum Drive, Suite 203
Jacksonville, FL 32207
(786) 363-1769
nwarren@aclufl.org

*Counsel for Floridians Protecting Freedom, Inc.*