# EXHIBIT F

# THE SECOND CIRCUIT COURT, LEON COUNTY, FLORIDA

Floridians Protecting Freedom, Inc., Plaintiff,

v.                                              Case: 2024CA1532

<u>Agency for Health Care Administration, Defendant.</u>/

## Order on Emergency Motion for Temporary Injunction

This matter is before the court on a document filed by plaintiff Floridians Protecting Freedom, Inc. ("Plaintiff" or "FPFI") on September 12, 2024 and entitled, "Emergency Motion for Temporary Injunction and Memorandum of Law" (the "Motion").  With the consent of Defendant Agency for Health Care Administration ("Defendant" or the "Agency" or "AHCA") the court set a briefing and hearing schedule by written order of September 19, 2024.  The court conducted a hearing by remote technology on September 25, 2024 and is adequately advised.

When courts speak of justiciability the essence of the point is that judges must exercise lawful authority without hesitation but must resist the temptation to power unconstrained by a reasonable resort to judicial process.  In an election campaign under these circumstances the political power reserved to the people in Article I, Section 1 of the Florida Constitution means that it is not for the courts to intervene in this referendum campaign to decide what the people will be permitted to consider.  This case is not justiciable.

For that reason, nothing in this order should be considered as expressing this court's views of the wisdom of the proposed constitutional amendment under consideration for the upcoming election or the relative merits of the arguments mustered for or against the amendment during the current campaign.   This order should form no part of any voter's decision whether to vote for this proposed amendment.

FPFI failed to prove the direct and substantial interest necessary to establish standing to challenge these communications.  FPFI is a political committee.  It succeeded in its sponsorship of the amendment, but FPFI has no more than a generalized interest in the outcome of the election that will not support standing to bring suit under these circumstances.  Really,

1

this is so because no person or entity has standing to litigate these issues in court during this campaign. The fact finder must be each voter who will choose the information the voter finds convincing and render judgment on each ballot. This case is not justiciable by courts because political power is reserved to the people in an election by means of each ballot. Cf., DeSantis v. Fla. Educ. Assoc., 306 So.3d 1202, 1214-15 (Fla. 1st DCA 2020) (it is not the judiciary's role to decide questions of policy choices and value determinations constitutionally committed for resolution to the legislative or executive branches). This controversy presents no manageable judicial standard for intervening in this campaign. See, Citizens for Strong Schools, Inc. v. Florida State Board of Education, 262 So.3d 127, 141 (Fla. 2019) (rejecting suggestion that judiciary "constitutionalize the Legislature's own standards").

Because of the shortness of time associated with this matter, the court briefly addresses the merits of the Motion in the hopes of affording meaningful appellate review.

As is frequently the case in election litigation brought when the election is only a few weeks away, the reliable processes of adjudication are strained. The voting will all be over November 2, barely a month away. The familiar purpose of a temporary injunction is to preserve the status quo pending a hearing with full due process, but there is unlikely to be an opportunity for much meaningful corrective relief. Cf. Florida Association of Realtors v. Orange County, 350 So.3d 115, 132 (Fla. 5th DCA 2022) (Cohen, J., dissenting) ("In this appeal, we are asked to review nearly 100 years of law, state statutes, and multiple briefs, and to provide an analysis in just a few days.").

The court summarized the basic law that governs all temporary injunction proceedings with notice in Holland M. Ware Charitable Foundation v. Tamez Pine Straw, 343 So.3d 1285 (Fla. 1st DCA 2022):

> A temporary injunction is an extraordinary remedy that should be granted sparingly. The purpose of a temporary injunction is to preserve the status quo while the movant seeks permanent injunctive relief. Four essential elements must be proven to obtain this extraordinary relief:
>
> > (1) a substantial likelihood of success on the merits,

2

> (2) a lack of an adequate remedy at law,
> (3) the likelihood of irreparable harm absent the entry of an injunction, and
> (4) that injunctive relief will serve the public interest.
>
> Each of these elements must be proven by the movant with competent, substantial evidence. Failure to prove any one of the four elements mandates denial of the motion for temporary injunction.

Id., at 1289 (citations and quotation marks omitted).

Holland especially illustrates the principle that an injunction with notice – as opposed to an *ex parte* injunction – is an evidentiary proceeding. See, Rule 1.610(a)(2) Fla. Rules. Civ. P. ("No evidence other than the affidavit or verified pleading shall be used to support the application for a temporary injunction unless the adverse party appears at the hearing or has received reasonable notice of the hearing.").

> The issuance of a temporary injunction is an extraordinary and drastic remedy which should be granted sparingly and with caution only after the party seeking the injunction has proven sufficient facts entitling it to relief. In determining whether the party seeking an injunction has met its burden of proof, the trial court must make clear, definite, and unequivocally sufficient factual findings to support each of the four conclusions necessary to justify entry of a preliminary injunction. . . .
>
> In a contested hearing on a motion for temporary injunction, a trial court must take evidence.

Id. at 1290, Rowe, J. concurring (citations and quotation marks omitted).

FPFI's assertion of a constitutional claim shows little chance of success on the merits. Fundamentally, the texts of the Florida constitutional provisions relied upon by FPFI in no way suggest this remedy or this limitation on participation in the election. The constitution establishes only a basis to put the matter to a vote of the people. The constitution does not suggest a basis for the courts to intervene in the campaign by deciding which arguments for and against the proposal are meritorious or misleading.

3

To the extent of Article I, Section 1 – "All political power is inherent in the people" – that power is vindicated by virtue of putting the issue to a vote.

Article XI, Section 3 states:

> Initiative.—The power to propose the revision or amendment of any portion or portions of this constitution by initiative is reserved to the people, provided that, any such revision or amendment, except for those limiting the power of government to raise revenue, shall embrace but one subject and matter directly connected therewith. It may be invoked by filing with the custodian of state records a petition containing a copy of the proposed revision or amendment, signed by a number of electors in each of one half of the congressional districts of the state, and of the state as a whole, equal to eight percent of the votes cast in each of such districts respectively and in the state as a whole in the last preceding election in which presidential electors were chosen.

Article XI, Section 3 was satisfied by virtue of the Florida Supreme Court's decision accepting the amendment for placement on the ballot. Advisory Opinion, 384 So.3d 122, 136 (Fla. 2024). No text of Article XI, Section 3 suggests that the courts are to intervene in the attempts to inform or persuade the voters.

Few appellate opinions suggest the remedy of an injunction in these circumstances although there is some tension in language. Compare, People Against Tax Revenue v. County of Leon, 583 So.2d 1373, 1375 (Fla. 1st DCA 1991) (a rule that officials "may never use their offices to express an opinion about the best interests of the community simply because the matter is open to debate . . . would render government feckless.") and Palm Beach County v. Hudspeth, 540 So.2d 147 (Fla. 4th DCA 1989) ("The appropriate function of government in connection with an issue placed before the electorate is to enlighten, NOT to proselytize." Emphasis in original). The commonality of these cases is that the courts did not grant relief to restrain communication during a campaign. Instead, the courts trusted the people to decide by their ballots. Cf. Dinerstein v. Bucher, 287 So.3d 639 (Fla. 4th DCA 2020) (applying § 106.133 of the Florida Statutes specifically forbidding local, but not state, government expenditures in support of or opposition to referenda but concluding that city funded literature "did not expressly advocate a position") and 2022-56,

4

section 2, Laws of Florida (forbidding expenditures even if "limited to factual information").

Words or phrases like "lie" and "fear monger" could be argued to be suggestive of the "proselytizing" referenced in Hudspeth. But without a firmer foundation of judicial process and evidence, such language is insufficient to vest the courts with the responsibility or authority to intervene during a referendum campaign. The propriety of such communication must be left to the people to evaluate.

As to the substance of AHCA's statements alleged in the complaint, the complaint's allegations would fail on the merits for insufficient proof if the issue was justiciable. FPFI presented no testimony subject to cross examination and the allegations are insufficient for the court to determine the materiality of these statements, their likelihood of having any affect at all on the outcome of this election, or their accuracy. To the extent of the effect of existing law or the proposed amendment on persons, patients, specific health conditions, treatment, and providers, such matters are not of such universal acceptance or knowledge to permit the court to take judicial notice. Articles in the media are not a reliable substitute for testimony subject to cross examination.

FPFI's assertion of the opinion of the Florida Supreme Court in certifying this proposal for placement on the ballot is misplaced. See, Advisory Opinion, 384 So.3d 122, 136 (Fla. 2024) ("We have also recognized that voters may be presumed to have the ability to reason and draw logical conclusions from the information they are given."). The Court expressed no intent to address debate regarding the breadth, ramifications or ambiguity of the proposal or for its analysis to serve as record to permit the judiciary to serve as arbiters of the propriety of such statements during a referendum campaign.

The Court's analysis was specific to its task in that proceeding -- determining whether the proposal was stated adequately to be put to a referendum. The Court's analysis was constrained by its purpose since, for ballot qualification, "[i]t is not necessary to explain every ramification of a proposed amendment, only the chief purpose." Id. at 133 (citation and quotation marks omitted).

5

The Court was explicit that its analysis need not and did not adjudicate factual disputes such as described in the complaint, because it concluded that such matters were irrelevant to its sole responsibility. The Court repeatedly emphasized that the proposal's breadth, ramifications not explicitly stated, ambiguity, or lack of clarity provided no basis to prevent putting the issue to a vote:

> While ***it may well be true that the proposed amendment would have broad effects flowing from its adoption that are not fully explained*** in the ballot summary, to fairly inform voters of its chief purpose, a ballot summary . . . need not explain every detail or ramification of the proposed amendment. Nor must it provide an exhaustive explanation of the interpretation and future possible effects of the amendment.

Id. at 133 (emphasis added).

> We acknowledge that the text of the amendment—like any legal text—presents interpretive questions, but ***we neither endorse nor reject any litigant's assertions about how the proposed amendment might be interpreted in the future*** and our decision today takes no position on the scope of legislative discretion that would remain if the proposed amendment were to become law.

Id. (emphasis added).

> This Court has held that it will not strike a proposal from the ballot based upon an argument concerning the ambiguous legal effect of the amendment's text rather than the clarity of the ballot title and summary. **The question for our consideration here is not whether the proposed constitutional language itself is free of any ambiguity or whether there are uncertainties regarding the potential legal effect if the proposed amendment were to pass** but whether the ballot summary misleads voters as to the new constitutional language voters are asked to adopt in the proposed amendment itself. In other words, it asks whether the ballot summary will give voters a false impression about what is contained in the actual text of the proposed amendment.

Id. at 134 (emphasis added, citations an internal quotation marks omitted).

6

> The fundamental problem with the main clarity arguments advanced by the opponents is that they effectively would impose requirements on the substance of a proposed amendment rather than require accuracy in the ballot summary. But an alleged ambiguity of a proposed amendment itself does not render a ballot summary misleading. And **this Court does not have the authority or responsibility to rule on the merits or the wisdom of these proposed initiative amendments. There is simply no basis in the constitution for imposing a requirement for clarity on the substance of a proposed amendment.**

Id. (emphasis added, citations an internal quotation marks omitted).

> [V]oters may be presumed to have the ability to reason and draw logical conclusions from the information they are given. . . . [B]allot language . . . is not required to explain every detail or ramification of the proposed amendment. **We thus presume that voters will have an understanding of the obviously broad sweep of this proposed amendment despite the fact that the ballot summary does not and cannot reveal its every possible ramification or collateral effect.**

Id. (emphasis added).

> "[W]e see no basis in law or common sense to require a ballot summary to announce, as if in a warning label, 'caution: this amendment contains terms with contestable meanings or applications. **Voters can see and decide for themselves how the specificity of the proposal's terms relates to the proposal's merits**."

Id. at 138 (emphasis added).

The Florida Supreme Court's opinion cannot be read as supplying evidentiary facts in this proceeding brought for a wholly different purpose.

Because the petitioner bears the burden, the failure to prove the allegations of the complaint means that the element of a substantial likelihood of success fails.

FPFI acknowledges that the court is without authority to enforce, by this civil injunction proceeding, the criminal statutes addressing agency communications since the legislature did not provide for such a remedy. But FPFI attempts to rely on these statutes as a basis for its constitutional argument. This court's research revealed no authority supporting such a remedy in these circumstances.

The record is insufficient for the court to conclude that granting the injunction is necessary to prevent irreparable harm or would serve the public interest. There is no evidence in this record of expenditure of public funds, the extent that persons were exposed to any of these communications (other than the participants in this litigation) and no evidence that any person has been misled. More damage would likely be done to the public interest were the courts to intervene, unfettered by meaningful evidence, in the final weeks of a contentious election on matters of great public interest and controversy. The judiciary must trust the people to decide what information is important to them.

The motion for temporary injunction is hereby DENIED. No motion for rehearing, reconsideration or similar relief will be considered or addressed by the court.

DONE AND ORDERED on Monday, September 30, 2024.

Jonathan Sjostrom, Circuit Judge
37-2024-CA-001532-1000M 09/30/2024 11:15:07 AM

| WILLIAM HENRY STAFFORD | NICHOLAS WARREN |
|---|---|
| william.stafford@myfloridalegal.com | nwarren@aclufl.org |
| complexlitigation.eservice@myfloridalegal.com | |
| alisha.robinson@myfloridalegal.com | |

8

| | |
|---|---|
| MICHELLE   MORTON | Daniel Marshall |
| mmorton@aclufl.org | Dan.Marshall@southernlegal.org |
| michelle@morton.im | maryel.duncan@southernlegal.org |
| | |
| Daniel Boaz Tilley | Jodi Siegel |
| dtilley@aclufl.org | jodi.siegel@southernlegal.org |
| danielbtilley@gmail.com | maryel.duncan@southernlegal.org |
| courts@aclufl.org | carolyn.keene@southernlegal.org |
| | |
| Margaret Good | Brian W. Barnes |
| margaret@margaretgoodlaw.com | bbarnes@cooperkirk.com |
| | |
| Clark L. Hildabrand | |
| childabrand@cooperkirk.com | |