IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

| | |
|---|---|
| FLORIDIANS PROTECTING FREEDOM, INC., <br><br> *Plaintiff*, <br><br> v. <br><br> JOSEPH A. LADAPO, in his official capacity as State Surgeon General and Head of the Florida Department of Health, <br><br> *Defendant*. | Civil Action No. 4:24-cv-00419 |

**PLAINTIFF'S REPLY BRIEF IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION**

## TABLE OF CONTENTS

INTRODUCTION ..........................................................................................................1

ARGUMENT ................................................................................................................1

I. FPF is likely to succeed on the merits. ...............................................................1

    A. FPF has shown a legally cognizable injury. ................................................1

    B. The State fails to rebut FPF's coercion and viewpoint claims on the merits. ............................................................................................................4

    C. The State's allegation of claim-splitting is baseless. ...............................11

II. A preliminary injunction is warranted because the harm to FPF significantly outweighs any harm to Defendant. ...................................................................12

## INTRODUCTION

In entering a temporary restraining order, this Court explained to Defendant that the First Amendment does not permit the State of Florida to decide which political speech is true and which is false. Defendant did not listen.

Instead, undeterred, the Department continues to aggrandize that power for itself, proclaiming its authority to criminalize speech the State deems "harmful." At the same time, Defendant's response gives away the game—acknowledging that even under the Department's twisted conception of the First Amendment, "Caroline" *has not caused any identifiable harm* to Floridians, and thus the Department had *no justification* to demand stations take it down. The October 3 letter is exactly what it appears to be: A coercive threat and rank viewpoint discrimination.

## ARGUMENT

**I.     FPF is likely to succeed on the merits.**

    **A.     FPF has shown a legally cognizable injury.**

As the Court recognized, FPF demonstrated an injury-in-fact, given "Defendant's past conduct and its threat of future enforcement." Order Granting TRO at 7, ECF No. 25 ("TRO Order") (citing *LaCroix v. Town of Fort Myers Beach*, 38 F.4th 941, 947 (11th Cir. 2022)). Nothing meaningful has changed. Although the Department has meagerly disclaimed enforcement under the "present circumstances" because it is "currently unaware of any harm that has arisen from the

airing of 'Caroline,'" Def.'s Resp. at 9, ECF No. 31 ("Resp."); Decl. of Department of Health, ECF No. 31-3 ¶¶ 4-5, Defendant's brief sings a different tune. Rather than concede the Department will not enforce sanitary nuisance laws against FPF's speech, Defendant argues that (1) "Caroline" contains "objectively false information," (2) harm will "foreseeably result" from "Caroline," and (3) when such harm occurs, "any subsequent enforcement action would be consistent with the First Amendment." Resp. at 20-21. In other words, the Department expects to find such "harm" and intends to prosecute when it does. Indeed, Defendant's robust defense of his authority to prosecute FPF's speech demonstrates the threat of future enforcement is very real. *See Wollschlaeger v. Governor, Fla.*, 848 F.3d 1293, 1305 (11th Cir. 2017) (a court may "infer" an "intent to enforce" when the State defends its ability to enforce the conduct in question). FPF's fears of enforcement are thus reasonable. *See* Ex. A, Oct. 25 Decl. of Sara Latshaw ¶¶ 7-10 ("Latshaw Decl. II").

Nor does FPF lack standing, as Defendant argues, because the Department has not (yet) issued a sanitary nuisance warning against FPF itself. *See* Resp. at 9. Florida law requires only 24 hours' notice before taking criminal enforcement action, Fla. Stat. § 386.03, which is cold comfort when the Department has already stated that "Caroline" is a sanitary nuisance. *See* Latshaw Decl. II ¶¶ 8-9. FPF easily satisfies the "quite forgiving" "credible threat of prosecution" standard, *Wollschlaeger*, 848 F.3d at 1305 (citation omitted), precisely because "the prospect of future

2

enforcement is far from imaginary or speculative." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 165 (2014) (quotation marks and citation omitted).

Even if this Court found FPF faced no credible threat of prosecution to *itself*, to succeed on its coercion claim FPF need show only that those who facilitate its speech (*i.e.*, the broadcasters) face a credible threat of prosecution. In *Bantam Books, Inc. v. Sullivan*, it was sufficient that the distributors faced a threat if they published plaintiff's speech, 372 U.S. 58, 67 (1963), and in *National Rifle Ass'n of America v. Vullo*, it was sufficient that the insurance companies faced a threat if they did not stop associating with plaintiff's advocacy, 602 U.S. 175, 193 (2024). Similarly, here, it is sufficient that the broadcasters faced a criminal threat for airing FPF's speech. And while the Department baldly speculates there could be *other* reasons that WINK-TV stopped airing "Caroline," Resp. at 9-10, the evidence is that WINK-TV stopped airing "Caroline" for days—when already paid for by FPF—only after it received the Department's letter threatening criminal sanctions and then refused to talk to FPF until it could conduct a "legal review." Oct. 16 Latshaw Declaration ¶ 25 ("Latshaw Decl. I"), ECF No. 24-1; Latshaw Decl. II ¶ 4. There is no plausible explanation for WINK-TV's conduct other than as a response to the Department's threat.

Finally, although FPF is not required to self-censor its speech to demonstrate injury-in-fact, *see Pittman v. Cole*, 267 F.3d 1269, 1283 (11th Cir. 2001),

3

Defendant's conduct is understandably having a self-censoring effect on FPF. *See* Latshaw Decl. II ¶¶ 11-14. This is an independent ground for standing. *See Wilson v. State Bar of Ga.*, 132 F.3d 1422, 1428 (11th Cir. 1998).

> **B.    The State fails to rebut FPF's coercion and viewpoint claims on the merits.**

As this Court held, FPF put forth sufficient evidence to sustain claims of both government coercion and viewpoint discrimination. *See* TRO Order at 9-14. Defendant's only defense is that FPF's speech is unprotected, *see* Resp. at 27, implicitly conceding that FPF would likely succeed on its claims if FPF's political advertisement *is* protected under the First Amendment. Although this Court already rejected the relevance of the Department's argument—at least as it pertains to FPF's coercion claim, *see* TRO Order at 13 n.5—Defendant's assertion is wrong: FPF's speech is core political speech entitled to the First Amendment's most vigorous protections, and the Department's attempt to portray its conduct as mundane enforcement of a law of general applicability is absurd.

FPF addresses Defendant's arguments below, but the simple point is this: Defendant cannot cite any remotely comparable case supporting its position, which is why it scarcely attempts to engage with the controlling cases of *Vullo* and *Honeyfund.com, Inc. v. Governor*, 94 F.4th 1272 (11th Cir. 2024).

> **i.  Defendant cannot show FPF's speech is unprotected by the First Amendment.**

"Caroline," which offers one woman's viewpoint on the danger of Florida's existing abortion ban and encourages voters to vote "Yes" on Amendment 4, is protected political speech under the First Amendment. *See McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 347 (1995) (holding issue-based advocacy "is at the heart of the First Amendment's protection" (citation omitted)). "No form of speech is entitled to greater constitutional protection." *Id*.

The Department first tries to pull "Caroline" out of the First Amendment's protections by proclaiming that it makes false categorical statements about existing law. Not so. The advertisement introduces Caroline, a woman diagnosed with a brain tumor, who explains that under existing laws, an abortion would not have been available "*in cases like mine*." Latshaw Decl. I ¶ 19. The advertisement does not say that Florida's law contains no life-saving exception whatsoever.

Nor is the advertisement "false" because the Department's lawyers disagree with a physician's sworn testimony about whether Florida's narrow exceptions would have applied to Caroline. While counsel asserts that it is "crystal clear" that an abortion in Caroline's case would be lawful because—in their estimation—"prolonging a person's life is saving it," Resp. at 1, 3 n.3, that conclusion is not crystal clear to an actual physician, Dr. Tien, who examined Caroline's medical history and concluded she could not have certified that Caroline's abortion was

5

"necessary to save" Caroline. Fla. Stat. § 390.0111(1)(a); Decl. of Shelly Tien ¶¶ 7-10, ECF No. 24-1. The only thing "crystal clear" to Florida's physicians is that they are guilty of a felony if they terminate a pregnancy and the State disagrees with their "medical judgment." Fla. Stat. § 390.0111(1)(a), (10)(a).

But even if the Department was correct that "Caroline" was "false," that *still* would not mean that the advertisement is unprotected under the First Amendment. Speech the government deems false or misleading, including about public health, can be afforded full First Amendment protection. *See, e.g.*, *Christ's Bride Ministries, Inc. v. Se. Pa. Transp. Auth.*, 148 F.3d 242, 247 (3d Cir. 1998) (advertisement suggesting abortion leads to breast cancer afforded full First Amendment protection); *Missouri v. Biden*, 662 F. Supp. 3d 626, 679 (W.D. La. 2023) (alleged censorship of COVID-19-related posts the government deemed misinformation plausibly stated a First Amendment violation). It is well-established there are only a few "traditional categories" of speech that are exempt from First Amendment protection: obscenity, speech integral to criminal conduct, defamation, so-called "fighting words," child pornography, fraud, and true threats. *United States v. Alvarez*, 567 U.S. 709, 717, 722 (2012) (cleaned up); *see also Honeyfund.com*, 94 F.4th at 1277 (refusing to create new exceptions to First Amendment). The *Alvarez* plurality refused to create a "general exception to the First Amendment for false statements," *Alvarez*, 567 U.S. at 718, and although Justice Breyer's concurring opinion

6

recognized possible exceptions for certain false statements that cause concrete harm, *see id.* at 734-35 (Breyer, J., concurring in the judgment), that concurrence did not create a new exception. Rather, "[w]ithout a single rationale from *Alvarez* that can be identified as a holding in the case, the only binding aspect of the decision is its specific result." *Animal Legal Def. Fund v. Reynolds*, 8 F.4th 781, 785 (8th Cir. 2021).

But even if Justice Breyer's concurrence *had* created an exception for false speech when it causes "actual injury" or where there is "proof that substantial public harm [is] directly foreseeable," 567 U.S. at 734-35 (Breyer, J., concurring), the Department admits it has not identified "any harm that has arisen from the airing of the 'Caroline' commercial." Resp. at 21. Nor could this Court conclude that "Caroline" is likely to cause "directly foreseeable" "substantial public harm." The Department's theory of harm is a daisy chain—that a woman will (1) watch "Caroline," (2) understand it to mean that abortions are never available when needed to save their life, something the advertisement does not say, (3) suffer a medical emergency while pregnant, and (4) instead of consulting with her doctor about the availability of abortion care in such an emergency, will unilaterally decide to not seek help (5) all because of but-for reliance on a single line in a political advertisement she watched. That conclusion is implausible. *See Animal Legal Def. Fund v. Kelly*, 9 F.4th 1219, 1234 (10th Cir. 2021) (harm resulting from a chain of

7

events "is too attenuated from the false speech to be the sort of harm *Alvarez* is concerned with").[1]

Moreover, Justice Breyer's concurrence cabined his discussion to "false statements about easily verifiable facts" as opposed to statements concerning "philosophy, religion, history, the social sciences, the arts, and the like," where strict scrutiny principles apply. 567 U.S. at 731-32 (Breyer, J., concurring). A political advertisement expressing an understanding of how the law applied to a specific woman's medical circumstances is not a "false statement[] about easily verifiable facts."

Finding that FPF's speech is protected does not mean the state is powerless to regulate speech that seriously harms public health. Speech can be restricted when it constitutes a "true threat" to bodily harm, *see United States v. Perez*, 43 F.4th 437, 439, 443 (5th Cir. 2022), and expressive conduct can be regulated during a public health emergency such as a deadly pandemic, *see, e.g.*, *Givens v. Newsom*, 459 F. Supp. 3d 1302, 1311-12 (E.D. Cal. 2020). But outside narrow exceptions to the First

---

[1] The three out-of-circuit *Animal Legal Defense Fund* cases the Department cites, *see* Resp. at 19-20, are inapposite. All involve a distinct line of cases regarding undercover reporting and the interplay between the First Amendment and property rights, and are premised on highly-specific circumstances including when there is "proof of specific or tangible harm," *Animal Legal Def. Fund v. Wasden*, 878 F.3d 1184, 1194 (9th Cir. 2018), when speech is "intentionally false" and undertaken to commit a crime, *Reynolds*, 8 F.4th at 786, and when harm "flow[s] directly" from the false speech, *Kelly*, 9 F.4th at 1234. Regardless, the Eleventh Circuit has not recognized that *Alvarez* created any such exceptions.

Amendment, the State may not censor speech based on the State's own "ad hoc balancing of [the speech's] relative social costs and benefits," *United States v. Stevens*, 559 U.S. 460, 470 (2010), as the Department has attempted to do here.

> ii. **The "general applicability" of sanitary nuisance laws has no bearing on whether the State can wield the law to attack protected speech.**

FPF does not contest that "[t]he First Amendment does not exempt [FPF] from public health laws of general applicability," Resp. at 16, but that broad proposition does not permit the Department to wield its laws to strangle speech it disfavors by calling it "injurious" to public health. *Id.* at 22 n.3. As the Court recognized, the Department's argument is "[n]onsense," TRO Order at 9, and "would swallow the First Amendment as it relates to the State going after speech it doesn't like." Oct. 17, 2024, TRO Proceedings Tr. 15:5-9.

Defendant again relies extensively on *Cohen v. Cowles Media Co.*, 501 U.S. 663 (1991), a case holding that reporters are subject, like any citizen, to the state's laws of general applicability, including specifically promissory estoppel laws, even if those laws have "incidental effects" on their ability to report the news. *Id.* at 669. Under *Cohen*, if FPF was dumping toxic waste, the Department could enforce its nuisance laws, even if enforcement had an "incidental effect" on FPF's ability to timely communicate its message. But *Cohen* does not permit the Department to silence FPF's speech simply by dubbing it a nuisance. That would mean there are no

9

limits on how the State could use the sanitary nuisance law to criminalize speech that it does not like.

The implications of the Department's arguments are vast. The State could say that a newspaper's editorial board's opinion concerning Amendment 4 constitutes a sanitary nuisance. *See, e.g.*, The Palm Beach Post Editorial Board, *Editorial: Vote yes on Florida Amendment 4, support abortion rights*, THE PALM BEACH POST (Oct. 13, 2024) (describing how current law has "no real exceptions for rape, incest or the health of the woman").[2] Or prosecute private citizens for writing letters to the editor. *See, e.g.*, Holly Kennedy, *Letter to the Editor: Vote Yes on Amendment 4*, THE BRADENTON TIMES (Sept. 19, 2024) ("My vote YES on 4 is a vote to protect the ability of medical professionals to provide reproductive healthcare that saves women's lives in emergency situations").[3] Such prosecutions would be a perversion of the state's sanitary nuisance laws, and it is not surprising that the Department cannot provide one example of a time it prosecuted an *idea*, let alone an idea in a political advertisement, as a sanitary nuisance.

---

[2]  https://www.palmbeachpost.com/story/opinion/endorsements/2024/10/13/put-reproductive-rights-in-constitution-yes-on-amendment-4/75557325007/ [https://perma.cc/Q94T-P5QB].

[3]  https://thebradentontimes.com/stories/vote-yes-on-amendment-4,107301 [https://perma.cc/5STG-YFBX]

### C. The State's allegation of claim-splitting is baseless.

The Department's claim-splitting argument can be rejected out of hand. The rule against claim splitting requires that harm resulting from "a *single wrongful act* [] be claimed or recovered in one action or not at all." *Mims v. Reid*, 98 So. 2d 498, 501 (Fla. 1957) (emphasis added). "Because the rule against splitting causes of action is only an aspect of res judicata, it logically follows that if res judicata is not a bar to the bringing of a claim, impermissible splitting of causes of action is not either." *Tyson v. Viacom, Inc.*, 890 So. 2d 1205, 1211 (Fla. 4th DCA 2005).[4]

Both rules bar the invocation of claim-splitting here. FPF brought a state-court lawsuit on September 12, 2024, under the Florida Constitution to protect its right to propose initiatives without interference (challenging the Agency for Health Care Administration's ("AHCA") ability to create a website expressly opposing Amendment 4). *See* ECF No. 31-4. Weeks later, the Department issued the October

---

[4] The Department assumes the federal claim-splitting doctrine applies. But *Vanover v. NCO Fin. Servs., Inc.*, 857 F.3d 833 (11th Cir. 2017), involved two federal court lawsuits, and where a federal court instead faces an accusation of claim splitting involving a state court suit, federal courts tend to apply Florida's claim-splitting doctrine. *See Bowman v. Coddington*, 517 F. App'x 683, 685 (11th Cir. 2013); *Collier HMA Physician Mgmt., LLC v. NCH Healthcare Sys., Inc.*, No. 218-cv-408, 2019 WL 277733, at *4 (M.D. Fla. Jan. 22, 2019). Regardless, for the same reason the claims do not arise out of a "single wrongful act," *Mims*, 98 So. 2d at 501, the claims do not arise out of the same transaction per the federal test, *Vanover*, 857 F.3d at 841-42.

11

3, 2024 letters, and FPF brought this federal court lawsuit against a different Defendant to protect its federal First Amendment rights.

A claim regarding AHCA's ability to use a public website and advertisements to oppose Amendment 4 and a claim that the Department cannot prosecute broadcasters (or FPF itself) for airing "Caroline" do not arise from a "single wrongful act." *Mims*, 98 So. 2d at 501. Underscoring that conclusion is that the state case was filed and a TRO was denied *before the Department sent the letters at issue in this case*. *See* ECF Nos. 31-4, 31-5. Moreover, because the state court case has not concluded and the cases do not involve "identical facts," res judicata cannot apply. *See Tyson*, 890 So. 2d at 1212 ("[r]es judicata defines a cause of action in terms of identical facts"); *Kimbrell v. Paige*, 448 So. 2d 1009, 1012 (Fla. 1984) (requiring a final judgment on the merits for res judicata to apply). Claim-splitting does not apply here.

## II. A preliminary injunction is warranted because the harm to FPF significantly outweighs any harm to Defendant.

Defendant's arguments on irreparable harm, equities, and public interest are all premised on the notion that FPF is telling "lies." Resp. at 3, 30-32. As FPF has shown, its advertisement is truthful. *See supra* at 5. But even if this Court concluded the advertisement was not susceptible to being labeled either "true" or "false," at most the advertisement (and this dispute) expose differences of opinion, something to be expected in a vigorous public debate over the wisdom of a state's existing laws.

12

It is telling that, although Defendant claims great harm would result from a preliminary injunction, the Department also concedes it is "currently unaware of any harm that has arisen from the airing of the 'Caroline' commercial." ECF No. 31-3 ¶ 4. By contrast, harm to FPF has already occurred and is ongoing, given the Department's refusal to disavow enforcement and clear intention to bring suit as soon as it is able to identify "harm." Latshaw Decl. II ¶ 16.[5]

Although a preliminary injunction that extends through Election Day is critical, FPF respectfully requests this Court not impose any present expiration date on any injunction, given the likelihood that FPF will need to keep speaking about Amendment 4 after Election Day, due to ongoing threats to the Amendment. *See id.* ¶ 15.

Dated: October 25, 2024

Respectfully submitted,

*/s/ Christina Ford*
Christina Ford, FL Bar No. 1011634

---

[5] The State's declaration confirms WINK-TV did not air "Caroline" for five days while Florida voters were casting their ballots. ECF No. 31-1. At the time FPF submitted its complaint and TRO, FPF candidly told the Court that it was talking with WINK-TV about getting the advertisement back on the air, and it did not know whether WINK-TV had in fact resumed airing "Caroline." *See* Compl. ¶ 58; Mem. Supp. Mot. for TRO at 11, ECF No. 24; Latshaw Decl. II ¶ 5. FPF's counsel did not receive confirmation that "Caroline" had begun re-airing until after the TRO was entered, which FPF planned to make clear to this Court with this filing, had the Department not already done so.

Ben Stafford*
**ELIAS LAW GROUP LLP**
1700 Seventh Ave., Suite 2100
Seattle, Washington 98101
Telephone: (206) 656-0177
bstafford@elias.law

Emma Olson Sharkey*
Christina Ford (FL Bar No. 1101634)
Renata O'Donnell*
**ELIAS LAW GROUP LLP**
250 Massachusetts Ave. NW, Suite 400
Washington, D.C., 20001
Telephone: (202) 968-4490
eolsonsharkey@elias.law
cford@elias.law
rodonnell@elias.law

*Admitted pro hac vice*

*Counsel for Plaintiff*

Daniel B. Tilley (FBN 102882)
Samantha J. Past (FBN 1054519)
Nicholas L.V. Warren (FBN 1019018)
Michelle Morton (FBN 81975)
**ACLU Foundation of Florida**
4343 West Flagler Street, Suite 400
Miami, FL 33134
(786) 363-2714
dtilley@aclufl.org
nwarren@aclufl.org
spast@aclufl.org
mmorton@aclufl.org

Jennifer Blohm
**MEYER, BLOHM AND POWELL, P.A.**
P.O. Box 1547,
Tallahassee, Florida  32302
(850)878-5212
jblohm@meyerblohmlaw.com

14

## CERTIFICATE OF COMPLIANCE

This document complies with the word limit of Local Rule 7.1(I) because, excluding the parts of the document exempted by the rule, this brief contains 3,198 words. This document complies with the type-style requirements of Local Rule 5.1(C) because this document has been prepared in a proportionally spaced typeface using the word-processing system Microsoft Word in 14-point Times New Roman.

Date: October 25, 2024                     /s/ *Christina Ford*
                                           Christina Ford

                                           *Counsel for Plaintiff*


## CERTIFICATE OF SERVICE

I certify that on October 25, 2024, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel who have entered an appearance.

Date: October 25, 2024                     /s/ *Christina Ford*
                                           Christina Ford

                                           *Counsel for Plaintiff*