# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF FLORIDA
# TALLAHASSEE DIVISION

FLORIDIANS PROTECTING
FREEDOM, INC.,

        *Plaintiff*,

  v.

JOSEPH A. LADAPO, in his official
capacity as State Surgeon General
and Head of the Florida Department
of Health,

        *Defendant*.

Case No. 4:24-cv-00419-MW-MAF

## DEFENDANT JOSEPH A. LADAPO'S SUPPLEMENTAL MEMORANDUM OF LAW ADDRESSING MOOTNESS

1. The Court requested supplemental briefing from the Defendant concerning whether this case is moot. *See* ECF 40, Order for Suppl. Briefing at 2. The State does not take the position that this case is currently moot under Article III. To be sure, the State believes that jurisdiction is lacking for other reasons. For example, standing does not exist for the reasons explained in the State's prior briefing. ECF 31, Def.'s Opp. to Prelim. Inj. at 7–11. And as the State anticipates arguing in its supplemental brief on irreparable harm, the case is not ripe for adjudication given the speculative nature of any enforcement-related harms. *See, e.g., Elend v. Basham*, 471 F.3d 1199, 1211 (11th Cir. 2006) (First Amendment claim not ripe where viability of claim turned on "circumstances" that had not yet come to pass). But because "Caroline" is still being aired in Florida, and because the effects of the advertisement are not finally known, the State does not take the position that this case is currently moot under Article III.

2. This case is, however, prudentially moot. *See Ingaseosas Int'l Co. v. Aconcagua Investing Ltd.*, 479 F. App'x 955, 962–63 (11th Cir. 2012). Under the doctrine of prudential mootness, a court may exercise its "discretion" and decline to grant relief when a controversy has become "'so attenuated that considerations of prudence and comity . . . counsel the court to stay its hand, and to withhold relief it has the power to grant.'" *Id.* at 962 (quoting *Chamber of Com. v. U.S. Dep't of Energy*, 627 F.2d 289, 291 (D.C. Cir. 1980)); *see United States v. W.T. Grant Co.*,

1

345 U.S. 629, 633 (1953).  Plaintiff filed this lawsuit and sought injunctive relief before engaging with the State about the conditions under which Florida might enforce its sanitary nuisance law.  The State has since clarified that it has not identified an individualized "harm that has arisen from the airing of the 'Caroline' commercial" and would "not mov[e] forward with an enforcement action under these circumstances."  ECF 31-3, Pasley Decl. ¶¶ 4–5.  This makes the prospect of meaningful relief speculative at best.  The critical question with respect to prudential mootness, then, is "whether changes in circumstances that prevailed at the beginning of the litigation have forestalled any occasion for meaningful relief."  *Int'l Bhd. of Boilermakers v. Kelly*, 815 F.2d 912, 915 (3d Cir. 1987).  That is the case here.  So the Court should refrain from issuing a preliminary injunction.

3. The State believes this case will likely become jurisdictionally moot after the election.  *See*, *e.g.*, *Brockington v. Rhodes*, 396 U.S. 41, 43 (1969) ("the case is moot because the . . . election is over"); *Hall v. Sec'y of Alabama*, 902 F.3d 1294, 1297 (11th Cir. 2018) (election mooted case); *Thompson v. DeWine*, 7 F.4th 521, 524 (6th Cir. 2021) (case "became moot when the election passed").

First, there is no plausible threat to Plaintiff's advocacy once the election has concluded.  *See* ECF 1, Compl. ¶ 1 (Plaintiff brought this lawsuit "to protect its rights . . . [to] disseminate FPF's political advertisements in support of Amendment 4 in the homestretch of campaigning before the November 5 general election.").

2

Floridians will vote to either reject or accept Amendment 4 on November 5, 2024. At that point, the alleged risk to Plaintiff's advertising campaign will be no more. It is no answer to suggest that there is some lingering possibility of enforcement in a different, future context. After all, the "remote possibility that an event might recur is not enough to overcome mootness, and even a likely recurrence is insufficient if there would be ample opportunity for review at that time." *Najjar v. Ashcroft*, 273 F.3d 1330, 1336 (11th Cir. 2001).

Second, it is highly likely that the speculative possibility of any enforcement action will dissipate entirely after the election occurs. As discussed, Plaintiff filed this lawsuit before engaging with the State about the conditions under which the State might enforce the sanitary nuisance statute. And the State has since clarified that it has not identified an individualized "harm that has arisen from the airing of the 'Caroline' commercial" and would "not mov[e] forward with an enforcement action under these circumstances." Pasley Decl. ¶¶ 4–5. In other words, the State would only consider enforcement upon a showing of legally cognizable harm. Plaintiff has taken the position that such harm is highly unlikely to occur. *See* ECF 39, Prelim. Inj. Hr'g Tr. at 21:6–8 ("we've shown the very large number of logical leaps that would have to occur for [the State] to determine that [the commercial] has actually caused harm"). And to date the State has identified no such harm. *See* Pasley Decl. ¶¶ 4–5. So on the present record, any risk of enforcement-related harm

3

is highly speculative. The State thinks it is reasonably likely that this speculative risk will become non-existent once "Caroline" stops airing after election day (assuming no legally cognizable harm presents itself in the coming days).

4. After the "Caroline" advertisement ceases to air, and prior to the expiration of the Court's temporary restraining order, the State intends to file with the Court supplemental materials addressing whether it has become aware of any legally cognizable harms that could trigger enforcement of its sanitary nuisance statute. If the status quo holds, it is likely these materials will show that the case is definitively moot.

5. For these reasons, the Court should deny Plaintiff's motion for a preliminary injunction. At minimum, the Court should permit the State to submit supplemental materials bearing on mootness after the conclusion of the election, and before issuing a preliminary injunction.

Respectfully submitted,

*/s/ Brian W. Barnes*
Brian W. Barnes, *pro hac vice*
Samuel D. Adkisson, *pro hac vice*
COOPER & KIRK, PLLC
1523 New Hampshire Ave., N.W.
Washington, D.C., 20036
Telephone: (202) 220-9600
Email: bbarnes@cooperkirk.com
sadkisson@cooperkirk.com

Date: November 1, 2024

ASHLEY MOODY
 *Attorney General*

Henry C. Whitaker (FBN 1031175)
 *Solicitor General*
Daniel William Bell (FBN 1008587)
 *Chief Deputy Solicitor General*
Nathan A. Forrester (FBN 1045107)
 *Senior Deputy Solicitor General*
Office of the Attorney General
The Capitol, PL-01
Tallahassee, Florida 32399-1050
(850) 414-3300
(850) 410-2672 (fax)

*Counsel for Defendant Joseph A. Ladapo*

5

## CERTIFICATE OF COMPLIANCE

This document complies with the word limit of Local Rule 7.1(F) and Local Rule 7.1(I) because, excluding the parts of the document exempted by the rule, the foregoing memorandum contains 944 words. This document complies with the type-style requirements of Local Rule 5.1(C) because this document has been prepared in a proportionally spaced typeface using the word-processing system Microsoft Word in 14-point Times New Roman.

Date: November 1, 2024

*/s/ Brian W. Barnes*
Counsel for Defendant
Joseph A. Ladapo

## CERTIFICATE OF SERVICE

I certify that on November 1, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel who have entered an appearance.

Date: November 1, 2024

> */s/ Brian W. Barnes*
> Counsel for Defendant
> Joseph A. Ladapo