IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

| | |
|---|---|
| FLORIDIANS PROTECTING FREEDOM, INC., <br><br> *Plaintiff*, <br><br> v. <br><br> JOSEPH A. LADAPO, in his official capacity as State Surgeon General and Head of the Florida Department of Health, <br><br> *Defendant*. | Civil Action No. 4:24-cv-00419 |

**PLAINTIFF'S SUPPLEMENTAL BRIEF**

## INTRODUCTION

By order dated October 29, 2024, the Court directed Plaintiff Floridians Protecting Freedom, Inc. (FPF) to submit supplemental briefing addressing whether it will suffer "imminent irreparable harm absent a preliminary injunction," following Election Day, with citation to supporting record evidence. Order for Supplemental Briefing, ECF No. 40. For the reasons set out below, FPF maintains that it will suffer such harm.

FPF faces two imminent, irreparable harms which merit a preliminary injunction that extends beyond Election Day. First, an enforcement action from the Department, which the Department can bring even after FPF is no longer actively disseminating "Caroline" on television, would itself constitute irreparable harm. Indeed, even if FPF no longer actively airs "Caroline" via broadcast stations, "Caroline" will continue to be available to the public online; FPF cannot put that speech back in a box. FPF need not show that Defendant will prosecute it *tomorrow* to show imminent harm. Instead, in a pre-enforcement action such as this, all that is required to show imminence is that an enforcement action against FPF is not speculative. Such harm is not speculative on this record, when Defendant has asserted that FPF's speech is a sanitary nuisance, has contended that harm from "Caroline" is directly foreseeable, has engaged counsel to represent the Department in enforcement proceedings, and has defended the Department's authority to

1

prosecute. *See* Def.'s Resp. at 21, ECF No. 31. Because the Department may initiate enforcement proceedings against FPF with little notice, a preliminary injunction will ensure that FPF is protected for having engaged in core protected political speech until such time as this Court may decide the matter on the merits.

Second, FPF anticipates that even after Election Day and regardless of the outcome of the election, it will need to speak about Florida's abortion laws—speech that FPF will be forced to moderate and self-censor with an eye towards avoiding prosecution with no preliminary injunction in place. This is a classic imminent, irreparable injury under black-letter law, even if the extent of such speech may be relatively short-lived in the weeks and months after Election Day.

## ARGUMENT

I. **FPF has shown imminent, irreparable harm in the form of an enforcement action from the Department of Health.**

A preliminary injunction is warranted after Election Day so that FPF is not subject to an enforcement action from Defendant before this Court can resolve this case on the merits. Such an injunction is necessary whether or not FPF is actively speaking about Amendment 4 or airing "Caroline" on television.

At the preliminary injunction hearing, in response to a question from this Court about whether FPF would "continue to air [Caroline] after election day," FPF's counsel responded that he had no reason to believe that "Caroline" would "run" after Election Day. *See* PI Hearing Transcript at 31:2-9. And that is true: at this moment,

FPF has no current reason to believe it will actively air advertisements on television, including "Caroline," after Election Day.

But FPF's speech will not disappear overnight, even if it no longer actively broadcasts "Caroline" on television. For example, FPF displays "Caroline" on its website's home page,[1] and on its YouTube channel,[2] and "Caroline" has now been re-published in countless news articles across the internet.[3] Moreover, the Department maintains that "Caroline" is a nuisance because of its words, rather than its visuals—and the advertisement's text has also been broadly disseminated across social media platforms.[4] FPF has no intention of scrubbing the internet of its prior speech, and it cannot put this speech back in a box even if it wanted to: Campaigns may end, but the Internet is forever.

The Department is authorized to "abate" nuisances and institute enforcement actions against those who permit, maintain, or cause the nuisance. Fla. Stat. § 386.041. As the Department has explained its theory of why "Caroline" is a

---

[1] *See* Oct. 15 Declaration of Sara Latshaw ¶ 19 ("Latshaw Decl. I"), ECF No. 24-1, Ex. C; Ltr. From Dept of Health, ECF No. 24-1, Ex. A at 1 ("Fla. Dep't of Health Ltr.") ("The advertisement is displayed on the home page of the Amendment sponsor's website under the title "Caroline. *See* https://floridiansprotectingfreedom.com/").
[2] *See* ECF No. 25 at 3 n.1 (citing https://www.youtube.com/watch?v=7jJiEE_AkPA).
[3] *See, e.g.*, Lawrence Mower, *'It's the First Amendment, stupid.' Judge tells Florida to stop threatening TV stations*, MIAMI HERALD (Oct. 17, 2024), https://www.yahoo.com/news/first-amendment-stupid-judge-tells-234404699.html.
[4] *See, e.g.*, @nowthisimpact, X.com (Oct. 7, 2024, 2:30 PM), https://x.com/nowthisimpact/status/1843358375951905048?s=46 [https://perma.cc/TS8R-MZZ2].

3

sanitary nuisance, nothing about its enforcement ability turns on whether a woman sees "Caroline" on television or whether she saw or read it on the Internet. FPF consequently understands the Department's position to be that it can prosecute FPF for "causing" the nuisance even if the advertisement is no longer actively broadcast in media markets throughout Florida.

As the U.S. Supreme Court has held, "[a]lthough the cost, anxiety, and inconvenience of having to defend against a single criminal prosecution alone do not constitute irreparable injury in the special legal sense of that term," such irreparable injury exists "where there is a showing of bad faith or harassment by state officials responsible for the prosecution" or where the prosecution would be "flagrantly and patently violative of express constitutional prohibitions." *Kugler v. Helfant*, 421 U.S. 117, 124 (1975) (cleaned up); *see also Rowe v. Griffin*, 676 F.2d 524, 526 (11th Cir. 1982) (holding same). As the Eleventh Circuit has recognized, such "direct penalization . . . of First Amendment rights constitutes irreparable injury," and neither "a monetary award nor prevailing on the merits of the state action could recompense" it. *Cate v. Oldham*, 707 F.2d 1176, 1188-89 (11th Cir. 1983), *certified question answered*, 450 So. 2d 224 (Fla. 1984).

As this Court rightfully held, by airing "Caroline," FPF did nothing more than engage in its First Amendment rights, *see* TRO Order at 2, ECF No. 25 ("Plaintiff's political advertisement is political speech—speech at the core of the First

4

Amendment."), and any prosecution of FPF for that speech would consequently be "flagrantly and patently violative of express constitutional prohibitions" or would be taken in "bad faith or [for] harassment." *Kugler*, 421 U.S. at 124. Indeed, the thought of sending out additional letters threatening prosecution for publishing "Caroline" was so egregious that Defendant's General Counsel opted to quit his job rather than join the Department in its quest to silence FPF's speech. *See* Declaration of John Wilson ("Wilson Decl."), ECF No. 29-1.

Although no enforcement action is currently pending against FPF (as the Court's temporary restraining order ensured the Department could not institute any action), the Department has made clear that, if unrestrained by this Court, it could take action as soon as it identifies "harm" arising from "Caroline." *See* ECF No. 36-1, Oct. 25 Decl. of Sara Latshaw ¶ 9. In its brief to this Court, rather than aver that the Department will not enforce sanitary nuisance laws against FPF's speech, Defendant argues that (1) "Caroline" contains "objectively false information," (2) harm will "foreseeably result" from "Caroline," and (3) when such harm occurs, "any subsequent enforcement action would be consistent with the First Amendment." Resp. at 20-21. In the preliminary injunction hearing before this Court, Defendant likewise refused to disclaim an enforcement action, and instead defended the Department's ability to enforce the state's sanitary nuisance laws against FPF, maintained that harm from "Caroline" was "certainly foreseeable," PI

5

Hearing Transcript at 22:7-9, and likened "Caroline" to a malicious claim that a city's 911 system was down, *see id*. at 5:25-6:5.

In other words, the Department has made clear that it views "Caroline" as a threat to public health, expects to find "harm" caused by "Caroline," and intends to prosecute when it does. Defendant's robust defense of his authority to prosecute FPF's speech demonstrates that the threat of future enforcement is very real. *See Wollschlaeger v. Governor, Fla.*, 848 F.3d 1293, 1305 (11th Cir. 2017) (a court may "infer[]" an "intent to enforce" when the State defends its ability to enforce the conduct in question).

In considering whether a preliminary injunction is appropriate, the Eleventh Circuit has contrasted "imminent" injuries with injuries that are "speculative." *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000). Although the Department has not initiated an enforcement action against FPF (again, while a temporary restraining order has been in place), an enforcement action against FPF in the absence of an injunction is not speculative on this record, when Defendant has already contended that FPF's speech is a sanitary nuisance, *see* Latshaw Decl. I ¶¶ 31-32 ("Latshaw Decl. I"), ECF No. 24-1, has contended "Caroline" will foreseeably cause harm, *see* Fla. Dep't of Health Ltr., has engaged counsel to represent the Department in enforcement proceedings, *see* Contract between Fla. Dept. of Health and Lombard Miles PLLC, ECF No. 24-1, Ex. F; *see* Contract between Fla. Dept. of Health and

6

First & Fourteenth PLLC, ECF No. 24-1, Ex. G, sent letters to television stations who aired Caroline threatening prosecution, *see* Fla. Dep't of Health Ltr., demanded that its General Counsel send additional threatening letters before he resigned in protest, *see* Wilson Decl. ¶¶ 7-8, ECF No. 29-1, and, after all this, has continued to defend the Department's authority to prosecute FPF's speech, *see* Resp. at 21 ("If injuries do occur in the future, they will constitute 'legally cognizable harm' that the State may remedy through its laws").

The circumstances here are a far cry from when the Eleventh Circuit has held that enforcement actions are sufficiently speculative such that a preliminary injunction is not warranted. *See, e.g.*, *Swisher Int'l, Inc. v. United States Food & Drug Admin.*, No. 21-13088, 2022 WL 320889 (11th Cir. Feb. 3, 2022). In *Swisher*, the Eleventh Circuit denied a preliminary injunction and held that a cigar seller was not likely to suffer irreparable harm of an enforcement action from the FDA where it had "stated that it had no intention of initiating an enforcement action against any of the [plaintiff's] products," had promised it "would not bring an enforcement action without providing 60 days' advance notice and considering [plaintiff's] response," and that it would take enforcement action "for only those violations occurring after the warning letter," thus giving the plaintiff a sufficient chance to seek "injunctive relief once a warning letter was issued." *Id.* at *5. Here, however, the Department has not disclaimed enforcement against FPF, need give FPF only 24

7

hours' notice of its intention to institute criminal proceedings, Fla. Stat. § 386.03—which is insufficient time to seek and obtain relief—and has not indicated it would prosecute FPF for future speech occurring after only after giving FPF a warning.

Although FPF does not yet know precisely when the Department might institute such proceedings against it, the "imminence" requirement does not mean that a plaintiff must show irreparable harm in the coming hours, days, or even weeks. Rather, "[t]he harm considered by the district court" for the purpose of a preliminary injunction is harm "which might occur in the interval between ruling on the preliminary injunction and trial on the merits." *United States v. Lambert*, 695 F.2d 536, 540 (11th Cir. 1983). Given the likelihood that this case will not reach a final resolution on the merits before the applicable statute of limitations runs within one year, a preliminary injunction would properly "preserve the relative positions of the parties until a trial on the merits can be held." *Id.* at 539-40 (citing *University of Texas v. Camenisch,* 451 U.S. 390, 395 (1981)).

## II.  FPF faces an additional imminent, irreparable harm in light of expected self-censorship after Election Day.

As the existing record demonstrates, FPF does not plan to stop speaking entirely after Election Day. Win or lose, FPF will speak about Florida's abortion laws. When the media inevitably asks FPF for comment on what FPF sees as the effect of a win (or loss), FPF knows that the Department thinks that some of what FPF would otherwise say about current Florida law is a sanitary nuisance. And as

8

FPF responds, it will need to make tough decisions about the language it uses, given the State's continuing insistence that FPF's positions are "false" and the State's positions are "true," requiring FPF to moderate and self-censor its speech in the process. *See* Oct. 25 Decl. of Sara Latshaw ¶¶ 11-14, ECF No. 36-1.[5]

This kind of self-censorship is a quintessential irreparable harm because it "cannot be undone through monetary remedies." *Cunningham v. Adams*, 808 F.2d 815, 821 (11th Cir. 1987); *see also Ne. Fla. Chapter of Ass'n of Gen. Contractors of Am. v. City of Jacksonville*, 896 F.2d 1283, 1285 (11th Cir. 1990) (holding First Amendment harms cannot "be compensated for by monetary damages" because of their "intangible nature"). And, although the period of time in which FPF will be forced to self-moderate and self-censor its speech after Election Day is not likely to be long, "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Roman Cath. Diocese of Brooklyn v. Cuomo*, 592 U.S. 14, 19 (2020) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality op.)). FPF thus requests that, based on this harm alone, the Court enter a preliminary injunction that will extend past Election Day to ensure it can speak without the threat of prosecution hanging behind every word it utters.

---

[5] If Amendment 4 passes, it will not become effective until early 2025, meaning that the State may seek to continue enforcing the current six-week law—and attempting to apply its nuisance law to FPF's speech about that law—even after Election Day. *See* Fla. Const. Art. XI, § 5(e) (providing that unless otherwise specified in a proposed amendment, a constitutional amendment becomes effective on "the first Tuesday after the first Monday in January following the election").

9

# CONCLUSION

In light of the irreparable harm that an enforcement action against FPF would cause, and FPF's need to speak about its viewpoint on Florida law after Election Day, FPF respectfully requests this Court issue a preliminary injunction that extends until this action concludes or until this Court issues a final ruling on the merits, whichever duration is shorter.

Dated: November 1, 2024

Respectfully submitted,

*/s/ Christina Ford*
Christina Ford, FL Bar No. 1011634

| | |
|---|---|
| Ben Stafford* | Daniel B. Tilley (FBN 102882) |
| **ELIAS LAW GROUP LLP** | Samantha J. Past (FBN 1054519) |
| 1700 Seventh Ave., Suite 2100 | Nicholas L.V. Warren (FBN 1019018) |
| Seattle, WA 98101 | Michelle Morton (FBN 81975) |
| Telephone: (206) 656-0177 | **ACLU Foundation of Florida** |
| bstafford@elias.law | 4343 West Flagler Street, Suite 400 |
| | Miami, FL 33134 |
| Emma Olson Sharkey* | (786) 363-2714 |
| Christina Ford (FL Bar No. 1101634) | dtilley@aclufl.org |
| Renata O'Donnell* | nwarren@aclufl.org |
| **ELIAS LAW GROUP LLP** | spast@aclufl.org |
| 250 Massachusetts Ave. NW | mmorton@aclufl.org |
| Suite 400 | |
| Washington, D.C. 20001 | Jennifer Blohm |
| Telephone: (202) 968-4490 | **MEYER, BLOHM AND POWELL,** |
| eolsonsharkey@elias.law | **P.A.** |
| cford@elias.law | P.O. Box 1547, |
| rodonnell@elias.law | Tallahassee, FL 32302 |
| | (850)878-5212 |

*Admitted pro hac vice*     jblohm@meyerblohmlaw.com

*Counsel for Plaintiff*

## CERTIFICATE OF COMPLIANCE

This document complies with the type-style requirements of Local Rule 5.1(C) because this document has been prepared in a proportionally spaced typeface using the word-processing system Microsoft Word in 14-point Times New Roman.

Date: November 1, 2024                     */s/ Christina Ford*
                                           Christina Ford

                                           *Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I certify that on November 1, 2024, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel who have entered an appearance.

Date: November 1, 2024                     */s/ Christina Ford*
                                           Christina Ford

                                           *Counsel for Plaintiff*