# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF FLORIDA
# TALLAHASSEE DIVISION

FLORIDIANS PROTECTING
FREEDOM, INC.,

    *Plaintiff*,

  v.

JOSEPH A. LADAPO, in his official
capacity as State Surgeon General
and Head of the Florida Department
of Health,

    *Defendant*.

Case No. 4:24-cv-00419-MW-MAF

**DEFENDANT JOSEPH A. LADAPO'S RESPONSE TO PLAINTIFF'S SUPPLEMENTAL BRIEF ADDRESSING IRREPARABLE HARM**

1.      The Court requested supplemental briefing from Plaintiff Floridians Protecting Freedom, Inc. ("FPF") concerning whether it faces an imminent risk of irreparable harm after the election. *See* ECF 40, Order for Suppl. Briefing at 2–3. The Court also requested a response brief from the Defendant on the same topic. *Id.* FPF's supplemental brief alleges two bases for a finding of post-election irreparable harm. First, FPF says that without a preliminary injunction it faces an imminent risk of enforcement action. ECF 42, Pl.'s Suppl. Br. at 1–2. And second, FPF says that without a preliminary injunction its speech will be chilled for some indefinite, but admittedly "short-lived," period after the election. *Id.* at 2. Neither alleged risk is actual or imminent, and neither justifies the "extraordinary remedy" of a preliminary injunction. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008).

2.      First, FPF has failed to show that post-election enforcement is likely to occur. Yet that is its burden in the context of a preliminary injunction—to show "that irreparable injury is *likely* in the absence of an injunction." *Id.* at 22 (emphasis in original). On the present record, however, the opposite is true—the risk of post-election enforcement appears quite *unlikely*. So preliminary injunctive relief is not warranted.

As explained in the State's Supplemental Brief addressing mootness, the speculative possibility of an enforcement action will likely dissipate soon after the election occurs. *See* ECF 41, Def.'s Suppl. Br. on Mootness at 3–4. FPF filed this

1

lawsuit before engaging with the State about the conditions under which it might enforce the sanitary nuisance statute. The State has since clarified that it has not identified an individualized "harm that has arisen from the airing of the 'Caroline' commercial" and would "not mov[e] forward with an enforcement action under these circumstances." ECF 31-3, Pasley Decl. ¶¶ 4–5. In other words, the State would only consider enforcement upon a showing of legally cognizable harm. Plaintiff has taken the position that such harm is highly unlikely to occur. *See* ECF 39, Prelim. Inj. Hr'g Tr. at 21:6–8 ("we've shown the very large number of logical leaps that would have to occur for [the State] to determine that [the commercial] has actually caused harm"). And to date the State is aware of no such harm. *See* Pasley Decl. ¶¶ 4–5. So the prospect of enforcement is highly speculative on the present record, and likely to become non-existent once "Caroline" stops airing after Election Day. *See* Def.'s Suppl. Br. on Mootness at 4.

FPF raises the specter that the presence of its advertisement online might somehow trigger a belated enforcement action. But such a fear is misplaced. The State only sent letters to broadcast television stations. *See, e.g.*, ECF 1-1, Fla. Dep't of Health Letter at 1–2. It did not send similar letters to any websites, online newspapers, or even to FPF itself. This despite the fact that "Caroline" was published online weeks before this litigation began. *See* Yes on 4 Florida, *"Caroline,"* YouTube (Oct. 1, 2024), https://bit.ly/3UDGuLP. Television is unique

in its ability to reach a captive audience. The State has never taken the position that it would consider mere publication of the "Caroline" commercial online a sanitary nuisance in Florida. The context and circumstances are entirely different.*

FPF relies on *Kugler v. Helfant*, 421 U.S. 117 (1975), in support of its argument that a preliminary injunction is warranted. But *Kugler* is far afield. For starters, *Kugler* recognized the traditional rule that "the cost, anxiety, and inconvenience of having to defend against a single criminal prosecution alone do not constitute irreparable injury in the special legal sense of that term." *Id.* at 124 (cleaned up). And the *Kugler* Court in fact reversed a lower court decision purporting to block a state-court prosecution. The Court did so even though one person was already under indictment—a much more imminent threat to liberty than the letters at issue here. *Id.* at 129–31. Nor does *Cate v. Oldham*, 707 F.2d 1176 (11th Cir. 1983), move the needle for FPF. In that case, a "malicious prosecution action" had already been launched against the plaintiff. *Id.* at 1189. The threat was

---

* FPF asks the Court to infer an intent to enforce based on the State's defense in this case, citing *Wollschlaeger v. Governor of Fla.*, 848 F.3d 1293, 1305 (11th Cir. 2017). But unlike in *Wollschlaeger*, this case does not involve a facial challenge to a Florida statute or the defense of such a statute. Instead, this case challenges hypothetical enforcement of the statute in an uncertain factual context. And the State has defended its ability to enforce the statute as applied in this case only in the context of legally cognizable harms, which neither party believes are currently present. *See* ECF 39, Prelim. Inj. Hr'g Tr. at 21:6–8. Such a defense hardly provides a sound basis for inferring an intent to enforce the statute in other circumstances—i.e., when legally cognizable harms are not present.

3

in no way speculative. That contrasts markedly with this case, where no enforcement action has been launched, and no enforcement action seems likely to materialize.

One final point deserves mention: FPF concedes in its brief that the State would have to provide it with at least 24 hours' notice before launching enforcement proceedings. ECF 42, Pl.'s Suppl. Br. at 7–8 (citing Fla. Stat § 386.03). To be clear—and consistent with the earlier representations in this brief—the State is currently aware of no basis for launching such proceedings. *Supra* at 2. But even under FPF's worst case scenario, it would have an opportunity to seek injunctive relief from the Court. This reality cuts decisively against the extraordinary remedy of a preliminary injunction. Because FPF is at present "suffering no serious harm, let alone irreparable harm," and because the prospect of enforcement-related harm is at this point "wholly speculative," FPF "cannot demonstrate a threat of continuing irreparable harm." *Siegel v. LePore*, 234 F.3d 1163, 1177 (11th Cir. 2000). So a preliminary injunction ought not issue.

3. Second, FPF argues that it also faces irreparable harm from its "expected self-censorship after Election Day." *See* ECF 42, Pl.'s Suppl. Br. at 8–9. But FPF cites just a single piece of evidence in support of this claim—four paragraphs from the declaration of Sara Latshaw. *See id.* at 9 (citing ECF 36-1, Latshaw Decl. ¶¶ 11–14). And none of those paragraphs provides *any* detail about the prospect of post-Election Day "self-censorship." The closest the declaration

comes is paragraph 14, which states: "Although FPF will continue to educate voters about Amendment 4 and Florida's current law, the threat of prosecution . . . cannot help but to make FPF choose not to engage in some speech it otherwise would." ECF 36-1, Latshaw Decl. ¶ 14. That is a far cry from showing a likelihood of self-censorship after Election Day.

First, taken at face value, paragraph 14 suggests that FPF is refraining from some speech at some point in time. But it is not clear what that speech is, when it is occurring, or whether the hypothetical speech would continue after Election Day. FPF has the affirmative burden of showing that irreparable harm is "likely." *Winter*, 555 U.S. at 22. Yet the only evidence relied upon by FPF—four paragraphs from the Latshaw Declaration—does not make that showing with respect to the period of time *after* Election Day.

Second, paragraph 14 makes only generalized allegations of self-censorship. Such "generalizations" are not sufficient to establish chill at all, let alone to establish a well-founded basis for chill following Election Day in particular. *See Dermer v. Miami-Dade Cnty.*, 599 F.3d 1217, 1220 (11th Cir. 2010). The declaration lacks critical information, such as the "when, where, or how" of the supposedly chilled speech. *Id.* at 1220–21. To show a genuine threat of chill, more is required—FPF's "bald assertion" of chilled speech, without more, simply does not suffice. *Hallandale Pro. Fire Fighters Loc. 2238 v. City of Hallandale*, 922 F.2d 756, 761

5

(11th Cir. 1991).

Third, FPF has not engaged in *any* self-censorship to date. So it is unlikely that FPF will engage in self-censorship after Election Day. *See Siegel*, 234 F.3d at 1177 (explaining that speculative or conjectural claims of future injury do not establish irreparable harm). When the State sent letters to broadcasters concerning the "Caroline" commercial, FPF said it would continue airing the advertisement even in the absence of preliminary relief. *See* ECF 1, Compl. ¶ 60. And the advertisement continued to air—including immediately before FPF filed its complaint, and on the very day the complaint was filed. *See* ECF 31, Def.'s Opp. to Prelim. Inj. at 5. FPF has identified no other speech it wished to engage in, but did not, as a result of those letters. In the single instance that FPF can point to, FPF did not engage in self-censorship; it doubled down. It is telling that FPF has not identified *any* speech that it would refrain from making after the election concludes because it fears prosecution.

Finally, FPF concedes that any alleged self-censorship is likely to be "relatively short-lived" after the election—though for precisely how long FPF does not say. ECF 42, Pl.'s Suppl. Br. at 2. The current temporary injunction in this case runs through November 12, 2024, which is one week after Election Day. *See* ECF 38, Order Extending TRO. FPF has failed to show that irreparable harm is likely to occur after the election, let alone after the TRO expires. For these reasons, the Court

6

should deny FPF's request for a preliminary injunction.

4. The speculative nature of FPF's post-Election Day allegations of irreparable harm show that this case is not ripe for adjudication. "The ripeness doctrine protects federal courts from engaging in speculation or wasting their resources through the review of potential or abstract disputes." *Digital Props., Inc. v. City of Plantation*, 121 F.3d 586, 589 (11th Cir. 1997). The doctrine is principally concerned with avoiding "'the hazards of premature adjudication.'" *Id.* (quoting *Felmeister v. Off. of Att'y Ethics*, 856 F.2d 529, 535 (3d Cir. 1988)). When determining whether a case is ripe, courts consider both (i) the "fitness" of an issue for judicial resolution, and (ii) the "hardship to the parties" of withholding resolution. *Id.* Here, neither of FPF's allegations of post-Election Day harm are ripe for adjudication.

The contours of any hypothetical enforcement action are wholly conjectural. Again, the State is aware of no basis upon which it would enforce the sanitary nuisance statute against FPF. *See* Pasley Decl. ¶¶ 4–5. A hypothetical enforcement action would not occur in the absence of some legally cognizable harm that so far as the State is aware has not and may well never happen. Wading into these murky waters now would draw the Court into precisely those "hazards of premature adjudication" that the Eleventh Circuit has warned against in the context of ripeness. *Digital Props., Inc.*, 121 F.3d at 589. Similarly, the Eleventh Circuit has held that

when judicial analysis "depends so critically" on "circumstances" that have not come to pass, a claim is not ripe. *Elend v. Basham*, 471 F.3d 1199, 1211 (11th Cir. 2006). That is true in First Amendment cases just as in all others. *Id.* And it is precisely the case here.

Nor is FPF's post-election enforcement claim ripe simply because of the State's past letters. It is black-letter law that where a government official has expressed some "initial reaction" but has not made a final "decision," a case is not ripe. *Digital Props., Inc.*, 121 F.3d at 590 (so holding in the First Amendment context); *see also Nat'l Advert. Co. v. City of Miami*, 402 F.3d 1335, 1339–40 (11th Cir. 2005) (same). *Cf. Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 71–72 (1963) (noting permissibility of pre-enforcement "consultation between law enforcement officers and distributors"). Claims must be allowed to "mature" before judicial resolution is appropriate. *Digital Props., Inc.*, 121 F.3d at 590. So the initial letters do not suffice to make FPF's post-election enforcement claim ripe. For these reasons, any hypothetical dispute about post-election enforcement proceedings is too speculative to sustain this action. And FPF will suffer no hardship from the Court waiting for factual development—no enforcement proceeding is imminent, and FPF would have an opportunity to seek relief from this Court even if one occurred.

FPF's generalized allegations about post-election self-censorship are also unripe, largely for the reasons discussed above. *See supra* at 4–7. FPF does not

8

explain what speech it wishes to make but would not because of the State's letters; what speech an objective person in its shoes would refrain from making; or how—other than through the highly unlikely prospect of enforcement proceedings—its speech could possibly be targeted by the State. Such a challenge is not ripe.

5. For these reasons, the Court should deny Plaintiff's motion for a preliminary injunction. At minimum, the Court should permit the State to submit supplemental materials bearing on irreparable harm after the conclusion of the election, and before issuing a preliminary injunction.

Respectfully submitted,

/s/ Brian W. Barnes
Brian W. Barnes, *pro hac vice*
Samuel D. Adkisson, *pro hac vice*
COOPER & KIRK, PLLC
1523 New Hampshire Ave., N.W.
Washington, D.C., 20036
Telephone: (202) 220-9600
Email: bbarnes@cooperkirk.com
sadkisson@cooperkirk.com

Date: November 4, 2024

ASHLEY MOODY
  *Attorney General*

Henry C. Whitaker (FBN 1031175)
  *Solicitor General*
Daniel William Bell (FBN 1008587)
  *Chief Deputy Solicitor General*
Nathan A. Forrester (FBN 1045107)
  *Senior Deputy Solicitor General*
Office of the Attorney General
The Capitol, PL-01
Tallahassee, Florida 32399-1050
(850) 414-3300
(850) 410-2672 (fax)

*Counsel for Defendant Joseph A. Ladapo*

## CERTIFICATE OF COMPLIANCE

This document complies with the word limit of Local Rule 7.1(F) and Local Rule 7.1(I) because, excluding the parts of the document exempted by the rule, the foregoing memorandum contains 2,192 words. This document complies with the type-style requirements of Local Rule 5.1(C) because this document has been prepared in a proportionally spaced typeface using the word-processing system Microsoft Word in 14-point Times New Roman.

Date: November 4, 2024

*/s/ Brian W. Barnes*
Counsel for Defendant
Joseph A. Ladapo

## CERTIFICATE OF SERVICE

I certify that on November 4, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel who have entered an appearance.

Date: November 4, 2024

*/s/ Brian W. Barnes*
Counsel for Defendant
Joseph A. Ladapo

11